## No. 15,961.

### WEIDERSPON *v.* THE PEOPLE.

(198 P. [2d] 301)

Decided September 20, 1948.

Mr. J. FRED SCHNEIDER, Mr. STUART B. ST. GERMAIN, for plaintiff in error.

No appearance for the people.

*En Banc.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

A PROSECUTION involving a charge of violation of sections 174 and 176, chapter 16, 1935 Colorado Statutes Annotated, having to do with "Motor Vehicle Accidents." The proceedings originated before a justice of the peace, where there was conviction of "Guilty of leaving scene of accident." On appeal to the county court, whence error is prosecuted, there was like conviction by a jury. Based thereon, and moved thereto by the district attorney, the court "finds the defendant guilty * * *, and assesses a fine of $200.00 * * *, and the costs of this action amounting to $110.10."

Specifically, the charge was, that, April 30, 1947, defendant "did, while driving a truck on Highway 40, near the town of Dumont, Colorado, collide with a certain automobile, driven by John Deitchel, causing damage to the automobile belonging to the said John Deitchel and serious personal injury to the body of the said John Deitchel; that the said Robert Weiderspon [defendant] did not stop at the time of the occurrence of the accident, nor did he remain at the scene of the accident or render proper aid to the injured as a result of said accident; contrary, * * *" etc. The sections of the statutes invoked by the prosecution, already mentioned, read as follows:

"§174. (a) The driver of any vehicle directly involved in an accident resulting in injury to or death of any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of section 176 of this chapter. Every such stop shall be made without obstructing traffic more than is necessary. (b) Any person failing to stop or to comply with said requirements under such circumstances shall upon conviction be punished by imprisonment for not more than one year or by fine of not more than $5,000, or by both such fine and imprisonment. (c) The

department shall revoke the operator's or chauffeur's license of the person so convicted."

"§176. The driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle which is driven or attended by any person shall give his name, address, and the registration number of the vehicle he is driving and shall upon request exhibit his operator's or chauffeur's license to the person struck or the driver or occupant of or person attending any vehicle collided with and where practical shall render to any person injured in such accident reasonable assistance, including the carrying, or the making of arrangements for the carrying, of such person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person."

It will tend to clarify our consideration to note that defendant is, and for the last ten years has been, engaged in trucking meat, grain, vegetables, fruit, and items of refreshment (soda pop, and the like) from Denver to Tabernash, and return, over Highway No. 40, making a round trip once each week, and that the earnings thereof provide a living for himself and family. What moved the prosecuting witness, proceeding at one o'clock in the morning, to leave Idaho Springs, his home city, for Downieville, a small hamlet a few miles to the westward, does not appear. We do not infer that the apparent legitimacy of defendant's presence on the highway at the time of the accident operates to absolve him from responsibility under the statute, nor that at the same fateful moment the prosecuting witness seemed only to be idling, makes the statute inapplicable. Nevertheless, as we are constrained to believe, the foregoing facts should have place in our thoughts as we address ourselves to the question of whether the evidence justified the judgment of conviction against defendant, the only party to the accident involved in this inquiry.

■ Before proceeding to analyze the evidence adduced concerning the accident at the time, and the acts of the parties immediately following, attention should be given to the law on which the prosecution rests. It is clear, we think, the statute here invoked does not contemplate that in a prosecution thereunder the court shall be concerned in determining where the fault lies. Nor may it be concerned about the extent of injuries to persons or damage to property, resulting from an accident made the basis of such a prosecution. Those questions are referable to a prosecution under a different statute, or to a civil action for damages. It is not the accident, as such, therefore, that constitutes the offense. Rather, the statute has to do with what motorists fail to do following an accident. "The statute," says the Supreme Court of Missouri, "is a simple police regulation. It does not make the accident a crime. If a crime is involved, it arises from some other statute." *Ex Parte Kneedler,* 243 Mo. 632, 147 S.W. 983. "It will be noticed that no distinction is made between a driver who is blameless and one who may be solely at fault." *Henry v. City of Cleveland,* 27 O.C.A. 321.

Generally, it appears that at about one o'clock in the morning of the day stated in the complaint, and at the place charged a few miles west of Idaho Springs, on Highway 40, a passenger car owned and being driven westerly by Deitchel, the prosecuting witness, and a truck owned and being driven easterly by defendant Weiderspon, "rubbed-sides," an expression employed to indicate that while each of the two vehicles involved in this happening was damaged by the other, nevertheless neither was stopped by the impact, and both remained upright and continued on under their own power. That is to say, the two principals' testimony considered, and employing their terminology, the vehicle of each "side-swiped" the vehicle of the other. Deitchel was accompanied by a man named Libbey, and Weiderspon by one Snow, both of whom were witnesses at the

trial. It further appears that the prosecuting witness and Libbey, both young and unmarried, reside in Idaho Springs; that defendant, married, and Snow (their ages not indicated), reside in Denver; that in the evening of the day preceding the early morning incident out of which this prosecution arose, from nine o'clock to midnight, the prosecuting witness and Libbey were in a tavern in Idaho Springs, known as "Duck Inn," drinking only beer and in moderation, as they testified; that at about one o'clock thereafter, or early morning, the two men, riding in the prosecuting witness' car, started for Downieville, a small place a short distance beyond Dumont; that at about 6:30 o'clock in the morning of April 29, defendant, accompanied by Snow, his helper, left Tabernash for Denver in defendant's truck, and, considering stops made en route in the due and usual course of his trucking business, properly reached the place of the unfortunate occurrence at the time when the prosecuting witness and his tavern acquaintance of the evening, journeying toward Downieville, arrived there.

More particularly, it appears that at the time of the accident the prosecuting witness, driving at a rate of forty-five miles per hour, as he testified, was proceeding on a curve in the road; that he was riding with his left arm in the window of his car; that while not colliding "head-on," the two vehicles did come together in the sense that each caused damage to the other, but not to the extent that either was halted by reason thereof; that as the result of the accident, not otherwise of serious import, the tragedy of major moment was that the protruding left arm of the prosecuting witness was completely severed. The fact of the accident, not the details or result thereof, as already we have seen, constitutes the basis of the statute involved, but that the story of the actions of the parties involved following the accident may be understood, we have thought it desirable to state the facts immediately preceding the accident in the

manner appearing. The prosecuting witness testified that his car went on westward some three hundred feet before he got it stopped. His passenger, Libbey, who then took the wheel from the injured Deitchel, testified that he drove a "little further—quite a ways past the scene of the accident." Before he "got turned around he drove two or three hundred feet around the curve." After turning around and starting toward Idaho Springs, he saw another car coming from the direction of that place. By blinking his lights he caused the driver of that car to stop, who, taking the wounded man into his car, and followed by Libbey in the Deitchel car, drove to the office of a doctor in Idaho Springs. Defendant, who testified he was driving thirty-five miles per hour, further testified that he heard a "swish" as his truck and the car of the prosecuting witness met and passed, and immediately applied the brakes and stopped within one hundred feet. He got out, and, with flashlight in hand, examined his truck and found it showed signs of having been "side-swiped," but was not greatly damaged. He looked up the road, saw no automobiles, or lights or persons on the highway, standing, going or coming. He then got back in the truck, and drove on through Idaho Springs to his home in Denver. That about 6:30 of the same morning he telephoned to his insurance carrier and the courtesy patrol of the incident. The patrol officer directed him to make a written report to their office within twenty-four hours, and at one-thirty that afternoon he went to the patrol office and gave a report in writing covering the incident to the extent of his knowledge, substantially as already we have stated. He did not know then that the driver of the other car had been injured or his car damaged. The witness who was riding in the truck, also alighted. His side of the truck (right), as of course, was not scratched or marred. He went behind the truck, looked up the road and saw no cars, people or lights, and, like defend-

ant, concluded that the car which they had met had gone on, as, indeed, it had, all as the prosecuting witness and his passenger testified. That car not only had gone on some several hundred feet, but it had gone around a curve in the road, and out of sight.

The part of the charge to the effect that defendant "did not stop," not only was unsupported by the testimony of any witness, but, as already we have seen, was disproved by the testimony of defendant, and that of his passenger who was in the truck at the time of the accident. Further discussion of that feature of the charge is unnecessary.

The part of the charge (both parts are in the same sentence) to the effect that defendant did not "remain at the scene of the accident or render proper aid to the injured as the result of said accident," should be examined in the light of the undisputed facts. It will aid our study to re-emphasize that our inquiry has naught to do with faults occasioning the accident. Only what occurred subsequently thereto is the sum of our concern. Defendant stopped within one hundred feet. He looked back to the point of "side-rubbing" of the vehicles, as did his helper, and neither, as they testified, saw person, car or lights there. More to the point, as the evidence shows, they were not there. The injured man himself, proceeding on the curved road, drove on some three hundred feet, when his passenger, cognizant of the injury suffered by the owner and driver of the car, taking the wheel, continued on until he had gone the same distance, or more, seeking opportunity to turn around for return to Idaho Springs, as already stated. So, the premises considered, two observations are in order: (1) That the injured man was not at the scene of the accident at any time when defendant could have been of assistance to him; (2) that the injured man was receiving adequate care from his passenger, not injured, who, through his own efforts and the help of the driver of another car whose services he induced, immediately started to take

the injured man to the nearest physician, and within a few minutes had him in the hands of a physician at Idaho Springs. In short, anything that defendant could have done for the injured man, was done by others, and with greater celerity than would have been possible at the hands of defendant. "Under the facts of this case," said the Supreme Court of California in a case quite similar, "the deceased [alive some hours after the accident there] was given all the assistance that could be required without the aid of the defendant. It is suggested," added that distinguished court, "that the defendant might have interjected his person into the midst of the several individuals who were caring for the deceased and insisted upon his own ministrations. This, we think, he was not required to do under the circumstances here shown. In other words," the court continued, "his assistance was not necessary. To have forced himself into the company of those who were rendering aid might have been an impertinence and not at all justifiable. A failure to do so should not subject the defendant to criminal responsibility under the statute." *People v. Scofield,* 203 Cal. 703, 258 Pac. 656. At another point in the California case the court further observed, that, "it is obvious that criminal liability should not attach in all cases where a literal application of the language of the statute might be made. * * * The law does not require the impossible."

██ Based on the unusual circumstances appearing, we think defendant's motion at the close of all the evidence to direct a verdict of acquittal, should have been granted. Nothing appeared to indicate that defendant was a man of criminal instincts, or that he was other than an industrious and law-abiding citizen, engaged at the time of the untoward happening in the course of his usual vocation. To visit upon him the considerable burden of the judgment below, as we are constrained to believe, would not serve justice. In connection therewith, as should not be overlooked, such visitation auto-

matically would operate to revoke his license to operate a truck, and drive him out of the lawful business that has claimed his attention for a decade.

 Considering that in a prosecution under the statute invoked here, judicial tribunals may be concerned only with the question of whether there was an accident in contemplation thereof, and the conduct of the parties involved therein in relation thereto after the event, we think the court erred in allowing the prosecution to introduce evidence of the confinement of the prosecuting witness in a hospital as the result of the accident. It was not pertinent to any triable issue and well may have been prejudicial to defendant.

Let the judgment be reversed and the cause remanded, to the end that the court may adjudge a dismissal of the action and defendant's discharge.

MESSRS. JUSTICES HAYS, ALTER and LUXFORD concur. MESSRS. JUSTICES JACKSON and STONE concur in the result.

MR. CHIEF JUSTICE BURKE dissents.