150 N.J. Super. 414 (1977)
375 A.2d 1223
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
PHILIP FEINTUCH, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 17, 1977.
Decided June 6, 1977.
*415 Before Judges LORA, CRANE and MICHELS.
Mr. Seymour Margulies argued the cause for appellant (Messrs. Brigadier and Margulies, attorneys).
Mr. Michael H. Kessler, Special Deputy Attorney General, argued the cause for respondent (Mr. J. Michael Evans, Special Deputy Attorney General-In-Charge, Acting Prosecutor, Union County, attorney).
PER CURIAM.
Defendant was tried and found guilty in the Hillside municipal court of leaving the scene of an accident contrary to N.J.S.A. 39:4-129(b). Following a trial de novo on the record, defendant was found guilty by the Union County Court and fined $25 plus $15 costs.
*416 On appeal defendant contends that (1) he is not in violation of N.J.S.A. 39:4-129(b) since this statute should be construed to require knowledge that there was an accident; (2) it would be an unconstitutional violation of due process to construe N.J.S.A. 39:4-129(b) as a strict liability statute; (3) defendant's motion for acquittal made at the close of the State's case should have been granted since the State failed to prove defendant's guilt beyond a reasonable doubt, and (4) the Appellate Division should, in considering its scope of review, reverse the judgment of the County Court.
The record reveals that on September 13, 1976, at about 4:10 P.M., complainant Joyce Zagieboylo was driving her small foreign car in the center westbound lane of Route 22 in Hillside. Traffic was rather heavy. She testified that traffic in her lane slowed down. Traffic in the left lane had stopped. Defendant, who had been driving his Lincoln Continental in that lane, "skidded to a halt and when he did so his car swerved a little bit as he screeched to a halt and touched the rear fender" of her car.
Complainant then testified:
I proceeded to pull over into the parking lot of the supermarket and traffic was stop and go, I honked my horn and sort of waved my arms and Mr. Feintuch continued driving down 22.
She stated that defendant never stopped, he did not exhibit his license or registration, nor did he ever get out of his car. Complainant knew it was the vehicle driven by defendant which had struck her vehicle because she had seen it in her rear view mirror, she turned around and saw his car, and it was the only car next to her when she felt the impact. She copied down the license plate number.
The left rear fender of complainant's vehicle was damaged. There was a dent about a foot long in the fender right behind the wheel. She received an estimate of $157 from an auto body repair shop to repair the damage.
*417 On questioning by the municipal court judge complainant explained that the rear bumper was not on her car at the time since she had had the rear fender repainted shortly prior to this incident, so that when defendant's bumper hit her car, it hit the fender.
A motion for judgment of acquittal was denied.
Defendant recalled that he had made a rather sudden stop and that his car had swerved to the right. He stated that the lane to his right was open when he did so swerve into it. Defendant further testified that there was no impact, he felt no impact, heard no one's horn honking, and did not see anyone trying to attract his attention. He first learned of the incident when he was served with a summons by mail. Subsequent examination of his car revealed there was not a thing on it.
Defendant first contends that a conviction for leaving the scene of an accident requires proof that defendant knew he was involved in an accident.
Prior to 1967 the relevant statute provided in pertinent part:
The driver of any vehicle knowingly involved in an accident resulting in injury or death to a person or damage to property shall immediately stop the vehicle at the scene of the accident, give his name and address and exhibit his operator's license and registration certificate of his vehicle to the person injured or struck and to any police officer or witness of the accident, and to the driver or occupants of the vehicle collided with and render to a person injured in the accident reasonable assistance, including the carrying of that person to a hospital or a physician for medical or surgical treatment, if it is apparent that the treatment is necessary or is requested by the injured person. [Emphasis added]
In State v. Gill, 47 N.J. 441, 445 (1966), the court emphasized that the hit and run statute needed revision and that the Uniform Vehicle Code, § 10-101 et seq. (1962), was a possible model.
Shortly thereafter the Legislature adopted a portion of the Code. Of particular importance, §§ 10-103, 104 were *418 adopted with minor variations. L. 1967, c. 189, § 1, N.J.S.A. 39:4-129(b) and (c) now reads as follows:
(b) The driver of any vehicle involved in an accident resulting only in damage to a vehicle, including his own vehicle, or other property which is attended by any person shall immediately stop his vehicle at the scene of such accident or as close thereto as possible, but shall then forthwith return to and in every event shall remain at the scene of such accident until he has fulfilled the requirements of subsection (c) of this section. Every such stop shall be made without obstructing traffic more than is necessary. Any person who shall violate this subsection shall be fined not less than $25.00 nor more than $100.00, or be imprisoned for a period of not more than 30 days, or both, for the first offense, and for a subsequent offense, shall be fined not less than $100.00 nor more than $200.00, or be imprisoned for a period of not less than 30 days nor more than 90 days, or both.
(c) The driver of any vehicle involved in an accident resulting in injury or death to any person or damage to any vehicle or property shall give his name and address and exhibit his operator's license and registration certificate of his vehicle to the person injured or whose vehicle or property was damaged and to any police officer or witness of the accident, and to the driver or occupants of the vehicle collided with and render to a person injured in the accident reasonable assistance, including the carrying of that person to a hospital or a physician for medical or surgical treatment, if it is apparent that the treatment is necessary or is requested by the injured person. In the event that none of the persons specified are in condition to receive the information to which they otherwise would be entitled under this subsection, and no police officer is present, the driver of any vehicle involved in such accident after fulfilling all other requirements of subsections (a) and (b) of this section, insofar as possible on his part to be performed, shall forthwith report such accident to the nearest office of the local police department or of the county police of the county or of the State Police and submit thereto the information specified in this subsection. [Emphasis added]
In adopting this statute, New Jersey became the 30th state to adopt a hit-and-run statute in substantial conformity with the Uniform Vehicle Code. Now there are 34.
A comparison of the underscored language of the present and former versions of N.J.S.A. 39:4-129 reveals the problem posed in this case. The former statute purports to apply to those drivers who are "knowingly involved in *419 an accident." See Lo Biondo v. Allan, 132 N.J.L. 437 (Sup. Ct. 1945); State v. Valeriani, 101 N.J. Super. 396 (App. Div. 1968). The present statute, on the other hand, deletes the word "knowingly" and applies to "the driver of any vehicle involved in an accident." The question is whether this deletion means that knowledge is no longer an essential element of the offense.
In State v. Labato, 7 N.J. 137 (1951), which involved possession of lottery slips, it was held:
Knowing possession is not to be confused with criminal intent or guilty knowledge. At common law, scienter is an indispensable element. The constituents of a criminal offense at common law are an evil intention and an unlawful act. Actus non facet reum, nisi mens sit rea. State v. Woodward, 99 N.J.L. 49 (Sup. Ct. 1923). But it is within the competency of the lawgiver, in the common interest, to declare an act criminal irrespective of the knowledge or motive of the doer of the act. The Legislature may make the doing of the prohibited act criminal or penal, regardless of a corrupt or criminal purpose or even knowledge of the illegal character of the act; and in such case only the doing of the proscribed act need be shown. [Citations omitted.] The criminal mind is not essential where the Legislature has so willed. The doer of the act may be liable criminally even though he does not know the act is criminal and does not purpose to transgress the law. But it is quite another thing to assess with criminal or penal consequences the unknowing "possession" of contraband articles. That would constitute an abuse of the police power. [at 149-150]
See also, State v. Hatch, 64 N.J. 179 (1973). In every case, the question is whether the Legislature, in enacting the statute at issue, intended to impose absolute criminal liability without regard to criminal intent. State v. De Meo, 20 N.J. 1, 8-9 (1955); State v. Tillem, 127 N.J. Super. 421, 426 (App. Div. 1974), certif. den. 65 N.J. 557 (1974), cert. den. 419 U.S. 900, 95 S.Ct. 183, 42 L.Ed.2d 146 (1974).
Unfortunately, there is no legislative history of N.J.S.A. 39:4-129 to aid in resolving this problem. Nor does the Uniform Vehicle Code discuss the issue.
The State's sole argument is that the adoption of the 1967 statute evidenced a conscious legislative decision to *420 impose strict liability on those who leave the scene of accidents. We are of the view, however, that the statute should be construed to require proof of knowledge of involvement in an accident in a prosecution for leaving the scene.
Initially, it is noted our courts have stated that the Motor Vehicle Act is penal, and a violation of its provisions results in a prosecution of a quasi-criminal action. State v. Cooper, 129 N.J. Super. 229, 231 (App. Div. 1974). The proposed New Jersey Penal Code, § 2c:2-2(c)(3) provides that:
Construction of statutes not stating culpability requirement. Although no culpable mental state is expressly designated in a statute defining an offense, a culpable mental state may nevertheless be required for the commission of such offense, or with respect to some or all of the material elements thereof, if the proscribed conduct necessarily involves such culpable mental state. A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, should be construed as defining a crime with mental culpability. This provision applies to offenses defined both within and outside of this code.
The commentary to Code subsection c(3) points out this provision is basically the same as § 15.15(2) of the New York Penal Code.
First, it suggests that in interpreting penal legislation, the fact that no culpability requirement is stated does not preclude reading the statute to include such an element. Second, a form of presumption against strict liability is created. A clear legislative intent to impose that type of liability is required. This is similar to our Supreme Court's approach in State v. Hudson County News Co., 35 N.J. 284 (1961).
Research has unearthed no cases construing § 103 of the Uniform Vehicle Code as enacted in other states which do not require proof of knowledge of the happening of an accident. The great weight of authority in this country, both in those jurisdictions that adopted the Uniform Vehicle Code sections enacted in New Jersey and those that did not, is that knowledge of the happening of an accident, *421 and in some states knowledge of consequential injury or damage is an integral part of the crime. See generally, Annotation, "Necessity and sufficiency of showing in a criminal prosecution under a `Hit and Run' statute accused's knowledge of accident, injury or damage," 23 A.L.R.3d 497 (1969); 7 Am. Jur.2d, Automobile and Highway Traffic, § 247 (1963).
The offense of leaving the scene of an accident makes little sense unless knowledge of the occurrence of an accident is part of the offense. In interpreting the statute in its pre-1967 form the Supreme Court noted that:
Its purpose is to prohibit the automobile driver involved in an accident from evading his responsibilities by escaping or departing before his identity is made known.
[State v. Gill, 47 N.J. 441, 443 (1966).]
This statement of policy unmistakably demonstrates that it is assumed that the person who was intended to be subject to punishment was a conscious wrongdoer  one who knew that an accident had taken place but nevertheless failed to report it or render aid and assistance. Any other construction would, in our opinion, amount to imposing a duty to report and render assistance on a party totally unaware of the event necessitating those acts  the accident. "Interpretations which lead to absurd or unreasonable results are of course to be avoided * * *." State v. Gill, supra at 444, and, in our view, the statute must require proof of knowledge if it is to be "construed sensibly and with due regard for the reasonable expectations of those who are subject to its terms." State v. Patterson, 47 N.J. 450, 454 (1966). Accordingly, we conclude that the mere absence of the word "knowingly" from the current law should not be construed as evidencing a legislative intent to create a strict liability offense.
However, it must be noted we do not believe that a summons under the statute is defective if it fails to allege that a defendant knowingly left the scene of an accident, *422 nor does our conclusion impose upon the State the burden of adducing positive proof of knowledge as part of its case in chief in order to withstand a motion for judgment or acquittal.
A defendant in a prosecution alleging violation of one of the quasi-criminal offenses enumerated in the Motor Vehicle Act is, of course, entitled to the basic rights afforded to criminal defendants, including the right to be convicted on proof of each element of the alleged offense beyond a reasonable doubt. State v. Emery, 27 N.J. 348, 353 (1958); State v. Cooper, 129 N.J. Super. 229, 231 (App. Div. 1974), certif. den. 66 N.J. 329 (1974). See also, State v. Johnson, 42 N.J. 146, 156 (1964); State v. DiCarlo, 67 N.J. 321, 327 (1975). However, this does not mean that the State must produce positive proof of knowledge. Rather, proof of an impact alone is sufficient to raise an inference of knowledge on the part of the fleeing driver sufficient to withstand defendant's motion for judgment of acquittal. See Lo Biondo v. Allan, supra. The trial judge must then decide whether the State has proved each element of the offense beyond a reasonable doubt.
Defendant further contends the proofs were insufficient to find him guilty of leaving the scene of an accident beyond reasonable doubt.
The State produced evidence of an accident and defendant's failure to stop. Defendant remembers having to swerve his vehicle from one lane to another but denies knowledge of any impact. In his opinion, the County Court judge stated as follows:
If the Court finds he knew of the accident or from the surrounding circumstances, he should have known of this accident, that it was in fact an accident. The fact if the Court finds that then he's violated the statute 394:121 [sic], I don't think from the facts that the Court could have not, the Court, in looking at the statement of both parties and looking at the surrounding facts, it is to me, the Court cannot conceive of how the defendant did not know since he admitted he swerved. It was stop and go even with this large car that he did not know that he hit a car because a foot impact, a foot *423 and $157 worth of damage. So the Court does not have to meet the issue of knowingly because as far as this Court is concerned, any reasonable mind would have known that there was an impact that he should have and therefore he did not know there was an impact and therefore he should have stopped. It is understandable he may have not heard the honking of the horn, but he should have known there was an impact. Once there is an impact, he has to stop and he has to exchange registration etcetera and having not done that, I find him guilty.
It is defendant's position that this passage indicates that the trial judge failed to apply the beyond a reasonable doubt standard; that the judge's discussion of whether defendant "knew or should have known" that there was an impact evidences his erroneous application of a lesser standard than proof beyond a reasonable doubt.
Our reading of this passage indicates the contrary. In discussing whether defendant knew or should have known of the impact, the trial judge was merely assessing the probative force of the inference of defendant's knowledge of the happening of the accident which arises once the State proves that an impact occurred. He compared the relative probative force of this inference with the probative force of defendant's denial of knowledge. He concluded that, under the circumstances of this case, it was inconceivable that defendant didn't know that there had been an accident. He then found defendant guilty.
Rather than delineating the erroneous application of a burden of proof less stringent than beyond a reasonable doubt, the passage demonstrates that the trial judge believed that the probative weight of the inference of knowledge arising from proof of impact outweighted the probative force of defendant's denial of knowledge. That is to say, he found defendant's denial not worthy of belief.
Our review of the record establishes that there is sufficient credible evidence present therein to support the trial judge's finding beyond a reasonable doubt that defendant *424 left the scene of an accident contrary to N.J.S.A. 39:4-129(b). State v. Johnson, 42 N.J. 146, 162 (1964).
Affirmed.