The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Patrick A. MANZO, Defendant–Appellant.

No. 03CA1384.

Colorado Court of Appeals, Div. IV.

Jan. 13, 2005.

Rehearing Denied Feb. 24, 2005.*

Certiorari Granted June 6, 2005.

* Russel, J., would Grant.

Ken Salazar, Attorney General, Paul Koehler, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

McGuire & Rabun, LLC, Bruce H. Rabun, Greenwood Village, Colorado, for Defendant–Appellant.

KAPELKE **, J.

Defendant, Patrick A. Manzo, appeals the order denying his Crim. P. 35(c) motion for postconviction relief from the judgment and sentence imposed upon his guilty plea. We reverse the order, vacate the judgment and sentence, and remand for further proceedings.

** Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

**I.**

Defendant pled guilty to one count of leaving the scene of an accident involving serious bodily injury, a class five felony. According to the charges, while driving his truck, defendant sideswiped a car, causing it to leave the road and go into a field. He failed to stop or remain at the accident scene. Three of the four occupants of the car suffered serious injuries.

Defendant was originally charged with one count of leaving the scene of an accident causing serious bodily injury, one count of failing to report an accident, and four counts of careless driving.

Pursuant to a plea bargain agreement, defendant pled guilty to an added count of leaving the scene of an accident causing serious bodily injury, and the remaining charges were dismissed.

The petition to enter a plea of guilty, which defendant signed, included the following:

The elements of the crime of leaving the scene of an accident (F5) are:

1. That the defendant,

2. in the State of Colorado, at or about the date and place charged,

3. being the driver or operator of a vehicle,

4. directly involved in an accident which resulted in serious bodily injury to another person,

5. did unlawfully fail to immediately stop his vehicle at the scene or as close thereto as possible or forthwith return to or in every event,

6. remain at the scene until he had fulfilled the requirements of Section 42–4–1603, C.R.S.

A person acts "knowingly" with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists. A person acts "knowingly" with respect to a result of his conduct when he is aware that his

§ 24–51–1105, C.R.S.2004.

conduct is practically certain to cause the result.

At the providency hearing, the prosecutor described the factual basis of the charge as follows:

[O]n June 13, 2002, the victims that I just listed were traveling southbound I believe from Boulder on Colorado Highway 93 in the direction of Golden.

And as they were traveling southbound the defendant driving an F–150 truck was exiting a parking lot and the two cars got into a serious, serious collision in which the defendant then, instead of remaining at the scene and calling the police and dealing with the situation, left.

The injuries to the victims range from no injuries up to very, very serious injuries. [One victim] as she will probably tell you at sentencing was injured very, very badly. Her hand was basically degloved, she had serious injuries to her face, her eyelid was ripped off.

The court then explained the rights defendant was giving up by pleading guilty and the possible penalties he was facing. The following exchange occurred:

[THE COURT]: All right, now you heard [the prosecutor] describe what I call the factual basis. The reason I ask for that is because I don't want an innocent man or someone who feels he's innocent pleading guilty to a crime. Did you hear what [the prosecutor] said?

[DEFENDANT]: Yes, sir.

[THE COURT]: You left the scene of an accident.

[DEFENDANT]: Yes, sir.

[THE COURT]: Do you have any questions you'd like to ask me at this time?

[DEFENDANT]: No.

[THE COURT]: Do you feel like you fully understand your rights?

[DEFENDANT]: Yes, sir.

[THE COURT]: Court finds that [defendant] has been fully and properly advised in writing and by the Court. He is represented by counsel with whom he's satisfied. He's acknowledged the factual basis.

The court sentenced defendant to two years in prison.

Thereafter, defendant filed his Crim. P. 35(c) motion to set aside his plea and conviction, arguing that he had not been properly advised of the culpable mental state for the offense of leaving the scene of an accident involving serious bodily injury and that his plea was therefore not knowing, voluntary, and intelligent. The trial court denied the motion, finding that defendant had been adequately advised of the elements of the offense, that there was a factual basis for his plea, and that his plea was knowingly and voluntarily made.

II.

Defendant contends that the trial court failed to advise him, as required by Crim. P. 11, of all the elements of leaving the scene of an accident involving serious injuries. Specifically, he maintains that he was not properly advised of the requisite culpable mental state of the offense. We agree that defendant's advisement was inadequate.

■ A guilty plea cannot be voluntarily or knowingly entered unless the defendant "understands the nature of the charge and the elements of the offense" to which he or she is pleading. Crim. P. 11. The record must demonstrate that the defendant understood any mental element of the crime. *Lacy v. People,* 775 P.2d 1, 6 (Colo.1989).

Section 42–4–1601(1), C.R.S.2004, which proscribes the offense to which defendant entered his guilty plea, provides in pertinent part:

The driver of any vehicle directly involved in an accident resulting in injury to, serious bodily injury to, or death of any person shall immediately stop such vehicle at the scene of such accident or as close to the scene as possible but shall immediately return to and in every event shall remain at the scene of the accident until the driver has fulfilled the requirements of section 42–4–1603(1).

The statute does not specify a culpable mental state element for the offense.

Section 18–1–503(1), C.R.S.2004, provides that when the commission of an offense re-

quires a particular culpable mental state, that mental state is ordinarily designated by use of a listed term describing a specific kind of intent or knowledge. Nevertheless, § 18–1–503(2), C.R.S.2004, provides:

Although no culpable mental state is expressly designated in a statute defining an offense, a culpable mental state may nevertheless be required for the commission of that offense, or with respect to some or all of the material elements thereof, *if the proscribed conduct necessarily involves such a culpable mental state.*

(Emphasis added.)

 Generally, to subject a defendant to criminal liability, there must be a concurrence of an unlawful act and a culpable mental state. *See People v. Naranjo,* 200 Colo. 1, 5, 612 P.2d 1099, 1102 (1980). Therefore, in construing a criminal statute, a court should not interpret legislative silence as an indication that no culpable mental state is required. "Rather, the requisite mental state may be implied from the statute." *Gorman v. People,* 19 P.3d 662, 665 (Colo.2000); *People v. Gross,* 830 P.2d 933, 942 (Colo.1992).

 Factors that may be considered in determining whether the legislature intended to impose liability without fault, or instead, meant to require fault though it failed to "spell it out clearly," include: (1) the legislative history; (2) guidance in some other statute; and (3) the severity of the punishment of the crime. "Other things being equal, the greater the possible punishment, the more likely some fault is required." 1 W. LaFave, *Substantive Criminal Law* § 5.5(a), at 384 (2d ed.2003).

First, we note that the legislative history is silent as to whether the General Assembly intended to impose liability without proof of a culpable mental state.

 The offense of which defendant was convicted here is a class 5 felony. In our view, the fact that the offense is a felony and exposes the offender to a concomitantly severe punishment indicates that a culpable mental state must have been intended by the General Assembly. We will not lightly assume that the legislature intended to subject conduct to serious criminal penalties without requiring a culpable mental state. *See People v. Sequin,* 199 Colo. 381, 386, 609 P.2d 622, 625 (1980); *People v. Washburn,* 197 Colo. 419, 422, 593 P.2d 962, 964 (1979) (holding that a culpable mental state was most likely constitutionally mandated if a criminal statute was to carry severe penalties); *see also People v. Ellison,* 14 P.3d 1034, 1037–38 (Colo.2000) (strict liability public welfare crimes are distinguishable from common law crimes in part because of the nature and severity of punishment).

Further, we note that the Colorado pattern jury instruction setting forth the elements of the crime of failure to give notice, information, and aid following a hit-and-run accident requires a showing that the defendant, as the driver of the vehicle, "knowingly and directly involved in an accident resulting in [injury to], [serious bodily injury to] [the death of] any person" failed to stop his vehicle and failed to take other actions, including giving certain information and rendering reasonable assistance where practicable. CJI–Crim. 37:13 (1983).

Most courts in other jurisdictions have construed hit-and-run statutes to require knowledge of the occurrence of the collision, injury, or damage as a prerequisite to conviction, even where the statute defining the offense does not expressly refer to a culpable mental state. Marjorie A. Caner, Annotation, *Necessity and Sufficiency of Showing, in Criminal Prosecution Under "Hit–and–Run" Statute, Accused's Knowledge of Accident, Injury, or Damage,* 26 A.L.R.5th 1, ¶ 2[a] (2004); *see, e.g., State v. Feintuch,* 150 N.J.Super. 414, 420–21, 375 A.2d 1223, 1226 (1977)(noting that "[t]he great weight of authority in this country ... is that knowledge of the happening of an accident, and in some states, knowledge of consequential injury or damage is an integral part of the crime").

Courts that have addressed statutory language similar to that here have indicated that to hold otherwise would make little sense: the purpose of such a statute is to ensure that an automobile driver involved in an accident will provide identification and assist in aiding or obtaining aid for those who are injured. The courts have reasoned that

it is unlikely the legislature intended to impose a penalty for failing to follow a course of action where the driver was unaware of the collision. *See State v. Wall,* 206 Kan. 760, 764, 482 P.2d 41, 44 (1971); *State v. Feintuch, supra,* 150 N.J.Super. at 421, 375 A.2d at 1226.

Thus, we agree with defendant that § 42–4–1601 logically requires that, to be found guilty, a defendant must have *known* that he or she was involved in an accident.

■ We nevertheless reject defendant's additional contention that to be convicted under § 42–4–1601, the defendant must also have acted with knowledge that serious injuries were incurred in the accident. Such a requirement is neither expressed nor implied in the statute, and interpreting the statute to impose such a requirement could defeat the public interest that is served by requiring drivers involved in collisions to stop and ascertain whether assistance is necessary. Otherwise, a callous person might make immediate flight from the accident scene to avoid learning whether injuries were sustained and how severe any such injuries were. *See People v. Martinez,* 120 Ill.App.3d 305, 313, 75 Ill.Dec. 936, 458 N.E.2d 104, 112 (1983); *State v. Wall, supra,* 206 Kan. at 764, 482 P.2d at 44.

■ Further, that a culpable mental state may be implied in a statute does not mandate that such a mental state be applied to *all* elements of the statute. *Gorman v. People, supra,* 19 P.3d at 666.

■ Here, the trial court did not advise defendant that one of the elements of the crime to which he was pleading guilty was knowledge that the accident had occurred. Although the court asked defendant whether he "had left the scene of an accident," to which he answered in the affirmative, this question was not tantamount to an advisement by the court or an admission by defendant of the "knowingly" element of the offense. The court did not ascertain whether, when he left the scene, defendant knew of the accident. Further, the plea agreement signed by defendant did not set forth a culpable mental state of "knowingly" as an element of the offense, but rather only defined that term without indicating whether or how it applied to the elements of the offense.

Under these circumstances, we conclude that because defendant's advisement was inadequate and failed to comply with Crim. P. 11, his conviction cannot stand.

The dissenting opinion, in concluding that the General Assembly intended that the offense at issue here be a strict liability offense, relies on *People v. DeHerrera,* 697 P.2d 734 (Colo.1985). We find that case distinguishable here, however. The offense in *DeHerrera* was leaving the scene of an accident resulting in damage to a vehicle. That offense, unlike the offense here, was not a felony, but rather merely a class two *traffic offense.* Understandably, the supreme court could conclude that no "knowingly" element had to be proven there. Moreover, we note that the jury in *DeHerrera* had been instructed that the offense of leaving the scene of the accident required a showing that the defendant knew the vehicle had been involved in accident. The defendant's challenge related to the instruction defining the term "knowingly".

The order denying postconviction relief is reversed, the judgment of conviction and sentence are vacated, and the case is remanded for further proceedings consistent with this opinion.

Judge GRAHAM concurs.

Judge RUSSEL dissents.

Judge RUSSEL dissenting.

In resolving an issue of statutory interpretation, the first, most important, step is to look to the plain language of the statute. *People v. Dist. Court,* 713 P.2d 918, 921 (Colo.1986). Here, the offense at issue— leaving the scene of an accident resulting in injuries—contains no culpable mental state:

> The driver of any vehicle directly involved in an accident resulting in injury to, serious bodily injury to, or death of any person shall immediately stop such vehicle at the scene of such accident or as close to the scene as possible but shall immediately return to and in every event shall remain at the scene of the accident until the driver

has fulfilled the requirements of section 42–4–1603(1).

Section 42–4–1601, C.R.S.2004.

Because this offense is premised solely on the performance of a voluntary act, it is logical to conclude that it is a strict liability offense. *See* § 18–1–502, C.R.S.2004 (if voluntary conduct is all that is required for commission of a particular offense, the offense is one of strict liability); *see also* § 18–1–503(1), C.R.S.2004 (when the commission of an offense requires a culpable mental state, that mental state is ordinarily designated by the use of terms such as "intentionally" and "knowingly").

Unlike the majority, I am not persuaded to reject a plain language approach for any of the reasons urged.

First, I do not think that the mental state of "knowingly" may be inferred pursuant to § 18–1–503(2), C.R.S.2004. In my view, the proscribed conduct—leaving the scene of an accident—does not "necessarily involve" general intent. A driver can leave the scene of an accident without acquiring actual awareness of the fact that he or she was involved in an accident. *See* § 18–1–105(6), C.R.S.2004 (a person acts "knowingly" with respect to a circumstance when he or she is aware that such circumstance exists).

Second, I do not think that § 42–4–1601 will violate constitutional principles if it is construed as a strict liability offense. The United States Supreme Court has never defined a due process limit on offenses that lack culpable mental states. *See Morissette v. United States,* 342 U.S. 246, 260, 72 S.Ct. 240, 248, 96 L.Ed. 288, 299 (1952). And though I do not doubt that such a limit exists, I think § 42–4–1601 rests on the safe side of the line. In my view, the legislature may constitutionally create an offense that carries the exposure of a class 5 felony without requiring proof of a culpable mental state. I note that, in *People v. Rostad,* 669 P.2d 126 (Colo.1983), the Colorado Supreme Court recognized that the legislature could premise liability for vehicular homicide—currently a class 3 felony under § 18–3–106(1)(b)(1), C.R.S.2004—on the defendant's voluntary conduct of operating a motor vehi-

cle while intoxicated, without requiring a culpable mental state.

Third, I am not persuaded by the fact that other state courts have construed similar statutory language to require knowledge of the accident. Although I would normally find such opinions to be instructive, I cannot credit these opinions when the Colorado Supreme Court has reached the opposite conclusion when construing similar language in a Colorado statute.

In *People v. DeHerrera,* 697 P.2d 734 (Colo.1985), the Colorado Supreme Court addressed § 42–4–1402 (now codified with amendments at § 42–4–1602(1), C.R.S.2004), which defined the offense of leaving the scene of an accident resulting only in damage to a vehicle. The court found that this statute created a strict liability offense that required only the performance of a voluntary act. *People v. DeHerrera, supra,* 697 P.2d at 741.

When *DeHerrera* was decided, the pertinent statute defined the offense as follows:

The driver of any vehicle directly involved in an accident resulting only in damage to a vehicle which is driven or attended by any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall forthwith return to and in every event shall remain at the scene of such accident until he has fulfilled the requirements of section 42–4–1403. Every such stop shall be made without obstructing traffic more than is necessary. Any person who violates any provision of this section commits a class 2 traffic offense.

Colo. Sess. Laws 1987, ch. 317, § 42–4–1402 at 1516.

I would construe § 42–4–1601 so that it is harmonious with the supreme court's view of § 42–4–1402. There are good reasons to do this:

●The statutes address the same subject matter. Both impose identical duties on the highly regulated activity of driving a motor vehicle. Because they are in pari materia, these statutes should be construed together. *See Walgreen Co. v. Charnes,* 819 P.2d 1039, 1043 n. 6 (Colo.

1991) (statutes relating to the same subject matter should be construed together in order to gather the legislature's intent from the whole of the enactments).

• The statutes are similar in their language and structure. The only substantive difference between the offenses is the type of damage or injury that may have occurred during the accident. This difference does not warrant a divergent approach to culpability, for, as the majority concedes, it is immaterial whether the driver knows of any injury.

• Both statutes create criminal offenses. When *DeHerrera* was decided, leaving the scene of an accident resulting only in damage to a vehicle was a class 2 traffic offense, which carried a maximum penalty of *90 days imprisonment and a $300 fine. See* Colo. Sess. Laws 1987, ch. 121, § 42–4–1501 at 628.

• Because these statutory offenses are not rooted in common law, they are not subject to an "interpretive presumption" in favor of requiring a mental state. *See United States v. United States Gypsum Co.,* 438 U.S. 422, 437, 98 S.Ct. 2864, 2873, 57 L.Ed.2d 854, 869–70 (1978) (*"Morissette* can be fairly read as establishing, at least with regard to crimes having their origin in the common law, an interpretative presumption that *mens rea* is required"); *see also People v. Washburn,* 197 Colo. 419, 422, 593 P.2d 962, 964 (1979) ("offenses which have their bases in common law such as provisions concerning theft must be construed to require a culpable mental state").

Ultimately, I do not agree that a hit-and-run statute "would make little sense" unless the driver actually knows that he or she was involved in an accident. The purpose of § 42–4–1601 is to create an incentive for drivers "to stop and render immediate and urgent assistance to the injured parties in a motor vehicle accident." *People v. Rickstrew,* 775 P.2d 570, 575 (Colo.1989). This underlying purpose is furthered by omitting a mental state requirement because drivers then have an incentive to stop, even when they are uncertain whether they have been in an accident.

Consider, for example, the driver in *Weiderspon v. People,* 118 Colo. 529, 534, 198 P.2d 301, 303 (1948), who merely "heard a 'swish' as his truck and the car of the prosecuting witness met and passed." Under today's decision, this driver has good reason not to stop, for ignorance (even willful ignorance) operates in his favor. But construed as written, § 42–4–1601 requires this driver to stop, determine whether there has been an accident, and render aid if necessary.

I acknowledge that the legislature's decision may be criticized on policy grounds. Any strict liability offense creates the possibility of unjust results. But in making its policy decision, the legislature may anticipate the proper exercise of prosecutorial discretion:

> Doubtless with many such crimes the legislature is actually aiming at bad people and expects that the prosecuting officials, in the exercise of their broad discretion to prosecute or not to prosecute, will use the statute only against those persons of bad reputation who probably actually did have the hard-to-prove bad mind, letting others go who, from their generally good reputation, probably had no such bad mental state.

W. LaFave & A. Scott, *Criminal Law* § 3.8, at 243 (2d ed.1986).

And I note that the majority's decision also may be criticized on policy grounds. If courts are going to add a culpable mental state element to § 42–4–1601, they might do better to reject general intent as the required standard and to use negligence instead. *See, e.g., Reynolds v. State,* 655 P.2d 1313 (Alaska Ct.App.1982) (offense of fishing in closed waters, which contains no explicit mental state element, requires proof that defendant "knew or should have known" that his boat was in closed waters). This would allow prosecution of drivers who did not know, but who should have known under the circumstances, that they were involved in accidents.

But it is not our job to decide what makes the most sense. Our task is to decide whether there is a statutory or constitutional reason to depart from the plain language of the

legislature's enactment. I think the answer is no.

For this reason, I respectfully dissent.