STATE OF NEBRASKA, APPELLEE, V. JAY D. JOST, APPELLANT.
361 N.W.2d 526

Filed February 1, 1985.   No. 84-144.

Rodney J. Palmer of Palmer & Kozisek, for appellant.

Paul L. Douglas, Attorney General, and Henry M. Grether III, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.
In the county court for Keya Paha County, Jay D. Jost was convicted of the offense of operating a motor vehicle during a

period when the operator's license of Jost was suspended. See Neb. Rev. Stat. §§ 60-418 and 60-430.01 (Reissue 1984). On appeal to the district court Jost's conviction was affirmed. We affirm.

Jost assigns as error the county court's (1) failure to obtain from Jost and expressly find a voluntary, understood, and intelligent waiver of the right to counsel; (2) failure to provide an attorney for Jost; and (3) acceptance of a plea of guilty to an act not committed, namely, Jost's guilty plea to the charge of operating a motor vehicle during a period of his suspended operator's license, whereas the driver's license of Jost had been revoked, not suspended.

Jost was initially charged with driving under suspension and driving under the influence of alcohol (Neb. Rev. Stat. § 39-669.07 (Reissue 1984)). Both counts arose as a result of one driving incident in which the Keya Paha County sheriff arrested Jost on May 16, 1982. The facts set forth were elicited when the county court sought a factual basis for Jost's "guilty" plea.

On October 22, 1980, and pursuant to the "point system" authorized by Neb. Rev. Stat. §§ 39-669.26 and 39-669.27 (Reissue 1984), the director of the Department of Motor Vehicles of the State of Nebraska revoked Jost's operator's license on account of a proscribed accumulation of points for traffic offenses.

In the early hours of May 16, 1982, and while the revocation of the Department of Motor Vehicles was still effective, Jost was seated in the right front seat of an automobile in the middle of the main street of Springview, Nebraska. The person who drove the auto to such location was not in the car with Jost at this time. Upon observing a car's headlights approaching from the rear, Jost slid behind the steering wheel and drove the car to the side of the street. The car approaching from the rear was driven by the sheriff, who saw Jost operating the automobile. Because he was not in uniform at this time, the sheriff returned to his home, changed into his uniform, and set out to find Jost. Jost and his driver-companion had traveled south out of Springview for several miles, where the driver stopped the car when its headlights failed. Approximately one-half hour after his initial contact with Jost, the sheriff arrived at the unlighted

and parked vehicle containing Jost and his companion. The sheriff then issued a "Uniform Citation and Complaint" charging Jost with two offenses, namely, "Driving under Suspension § 60-430.01," and "Driving under Influence of Alcohol 2nd offense § 39-669.07."

Jost's attorney arranged a plea bargain with the county attorney, that is, dismissal of the charge of driving while under the influence of alcoholic liquor in exchange for Jost's plea of guilty to the charge of driving under suspension. After obtaining the plea agreement but before Jost's arraignment, the attorney for Jost withdrew. Jost was arraigned on December 17, 1982, in the county court. At the arraignment the court reminded Jost that his attorney had withdrawn and told Jost that if Jost wanted to be represented by an attorney, such wish should be indicated to the court. The court also informed Jost about the availability of court-appointed counsel, if Jost was "unable to afford [his] own attorney." The court then elaborated the rights accorded Jost, including the right to a jury trial, confrontation of witnesses, and the privilege against self-incrimination. Next, the court explained the consequences of the various pleas which Jost could enter and the penalty which could be imposed on conviction. See § 60-430.01 and Neb. Rev. Stat. § 28-106 (Reissue 1979) (Class III misdemeanor). The county judge informed Jost that he was charged with "driving under suspension" and that the State was required to prove by evidence beyond a reasonable doubt that Jost was "driving an automobile on May 16, 1982, after your license was suspended." After the court's inquiry about the nature of his plea to the charge of driving under suspension, Jost entered a plea of guilty. When the court asked the county attorney about the factual basis for the charge against Jost, the county attorney recited the previously described events of May 16 and referred to an abstract of Jost's driving record reflecting revocation of Jost's driver's license "for points" on October 22, 1980, with no reinstatement of Jost's operator's privileges at the time the sheriff saw Jost drive the car on the Springview street. The court then inquired of Jost: "Is it all correct what he [the county attorney] said, basically?" Jost responded: "Yeah. What he says is correct." The court deferred sentencing until April 15,

1983. At the sentence hearing Jost was asked by the judge whether he had decided to have an attorney present. Jost responded: "Yes, I don't need one present." The county judge then imposed sentence on Jost, who appealed to the district court and ultimately to this court.

At the time Jost operated the auto on the public street in Springview, pertinent statutes of Nebraska provided:

> Any resident or nonresident whose operator's license or right or privilege to operate a motor vehicle in this state has been suspended or revoked as provided in this act, shall not operate a motor vehicle in this state under a license, permit or registration certificate issued by any other jurisdiction or otherwise during such suspension or after such revocation until a new license is obtained when and if permitted under this act, except that such persons shall be eligible to operate a motor vehicle under an employment driving permit as provided by section 39-669.34.

§ 60-418.

> Whoever violates the provisions of sections 60-401 to 60-430 shall be deemed guilty of a Class III misdemeanor, unless the act committed is by law declared to be a felony. Any person convicted of operating a motor vehicle in violation of any order of suspension or revocation of his license or privilege to operate a motor vehicle by either any court or the Director of Motor Vehicles, or after such suspension or revocation and before reinstatement of the license or issuance of a new one, shall be guilty of a Class III misdemeanor.

Neb. Rev. Stat. § 60-430 (Reissue 1984).

> Any person who shall be convicted of operating a motor vehicle during any period that his or her motor vehicle operator's license has been suspended or revoked pursuant to any law of this state, or after such suspension or revocation but before reinstatement of his or her license or issuance of a new license shall: (1) For a first such offense, be guilty of a Class III misdemeanor, and the court shall, as a part of the judgment of conviction, order such person not to operate any motor vehicle for any

purpose for a period of one year from the date of final discharge from the county jail, or the date of payment or satisfaction of any fine imposed, whichever is later; . . . .

§ 60-430.01.

It shall be unlawful to operate a motor vehicle on the public highways after revocation of an operator's license or privilege revoked under the provisions of sections 39-669.26 to 39-669.30, except that a motor vehicle may be operated under an employment driving permit as provided by section 39-669.34. Any person who violates the provisions of this section shall be guilty of a Class III misdemeanor.

Neb. Rev. Stat. § 39-669.30 (Reissue 1984).

Revocation of operator's license shall mean the termination by a court of competent jurisdiction or by formal action of the department of a person's license or privilege to operate a motor vehicle on the public highways, which termination shall not be subject to renewal or restoration except that an employment driving permit may be issued as provided by this act. Application for a new license may be presented and acted upon by the department after the expiration of the applicable period of time prescribed in the statute providing for revocation.

Neb. Rev. Stat. § 39-602(80) (Cum. Supp. 1982).

Suspension of operator's license shall mean the temporary withdrawal by a court of competent jurisdiction or by formal action of the department of a person's license or privilege to operate a motor vehicle on the public highways for a period specifically designated by the court or department. An employment driving permit shall be issued following suspension as provided in this act.

§ 39-602(102).

The gravamen of or the misconduct prohibited by § 60-418 and § 39-669.30 is operation of a motor vehicle after judicial or administrative deprivation of the operator's privilege or license to operate a motor vehicle on the public highways of the State of Nebraska. See *Middleton v. State*, 214 Miss. 697, 59 So. 2d 320 (1952).

In *State v. Ruggiere*, 180 Neb. 869, 146 N.W.2d 373 (1966),

this court held that amendment of a questioned complaint by substitution of "revocation" for "suspension" was permissible, and noted at 872, 146 N.W.2d at 375: "Distinctions between suspension and revocation in *other* contexts are often crucial." (Emphasis supplied.) One difference between "revocation" (§ 39-602(80)) and "suspension" (§ 39-602(102)) lies in the potential duration of deprivation of a driver's license or operator's privilege. In the case of suspension there is deprivation for a definite time, while in the case of revocation the deprivation endures for an undefined time. Also, revocation contemplates the necessity of a new license at expiration of the revocation. Any distinction in the statutes is not based upon the prohibited misconduct, which in essence is identical and equally offensive under the statutes discussed.

In *State v. Kotz*, 337 N.W.2d 530 (Iowa 1983), the Supreme Court of Iowa held that a defendant can be prosecuted and convicted on a charge of driving under license suspension, although such defendant's license had been revoked, not suspended. In *Kotz* the court found every pertinent point in the Iowa statute prohibiting driving during a suspended license was also included in the statute prohibiting driving during revocation of a license. The same situation exists with respect to the corresponding Nebraska statutes involved in Jost's case. In agreeing with the conclusion reached in *Kotz*, we find the observations and comments by the Iowa Supreme Court most appropriate: "While law enforcement should use these terms accurately, there is no indication that the defendant was prejudiced in any way. Further, the two terms function similarly here." *Id*. at 532.

> In criminal proceedings the complaint, information, or indictment is constitutionally sufficient (1) if there is a correct statement of the elements of the offense charged so that a defendant knows the charge against which he must defend, and (2) if the formal, written accusation (complaint, information, or indictment) enables the defendant to plead an acquittal or conviction in bar of any future prosecution for the same offense.

*State v. Turner*, 218 Neb. 125, 129-30, 354 N.W.2d 617, 621 (1984).

The sheriff's citation-complaint accused Jost of operating a motor vehicle after and while Jost's driver's license or operator's privilege had been withdrawn by proper authority. The State was required to prove by evidence beyond a reasonable doubt the elements of the offense, namely, that Jost did operate a motor vehicle on a public highway when Jost's driver's license or operator's privileges had been taken away by some lawful authority. Consequently, there was nothing prejudicially deceptive about the form or content of the citation concerning Jost. Although the terms "suspension" and "revocation" were used interchangeably in this case, such misuse did not rise to the stature of sufficient prejudice to warrant reversal of the judgment entered in the county court.

Although an accused is entitled to be represented by counsel in all critical stages of a criminal proceedings against him, including sentencing, *State v. Harig*, 192 Neb. 49, 218 N.W.2d 884 (1974), it has long been the rule in the State of Nebraska that the right to counsel may be waived if such waiver is made intelligently and understandingly with the knowledge of an accused's right to counsel. *State v. Morford*, 192 Neb. 412, 222 N.W.2d 117 (1974). A defendant has a constitutional right of self-representation and may proceed to defend himself without counsel, when he voluntarily, understandingly, and intelligently elects to do so. In *Faretta v. California*, 422 U.S. 806, 834, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), the U.S. Supreme Court held:

> The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of "that respect for the individual which is the lifeblood of the law." *Illinois v. Allen*, 397 U.S. 337, 350-351 [90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970)] (Brennan, J., concurring).

The record in its entirety discloses that the waiver by Jost regarding his right to counsel was voluntarily, understandingly, and intelligently made. See, *State v. Tweedy*, 209 Neb. 649, 309

N.W.2d 94 (1981); *State v. Ziemba*, 216 Neb. 612, 346 N.W.2d 208 (1984).

Concerning a determination or finding that there was a factual basis for Jost's "guilty" plea, it is true that the county judge never expressly stated that he found a factual basis for the plea. In the present state of the criminal justice system, one would have thought that all approved requirements for valid entry of a guilty plea would be carried out almost as a matter of second nature. Apparently, such is not the case, as reflected by the appeal before us. Determination whether a factual basis exists benefits defendant and the criminal justice system alike. First, such determination insures that a defendant actually committed an offense at least as serious as the one to which he is willing to plead guilty. Second, judicial inquiry into a factual basis for a plea provides a more adequate record of the conviction process, minimizing the necessity of overturning a conviction due to impermissible irregularities in entry of a plea. Third, inquiry provides a court with a sound basis to evaluate a defendant's competency, willingness to plead guilty, and understanding of the accusation or charge against the defendant. Cf., *State v. Hyslop*, 189 Neb. 331, 202 N.W.2d 595 (1972); *State v. Hill*, 204 Neb. 743, 285 N.W.2d 229 (1979); ABA Standards Relating to Pleas of Guilty § 1.6 (1982). In any event, the necessary elements constituting a factual basis for Jost's guilty plea do appear in the record. Implicit in imposition of sentence on Jost was the county judge's determination that a factual basis existed for the plea precedent to imposition of sentence. We reiterate that any arraignment and entry of plea should contain an express statement by the court that a factual basis does exist for disposition of the accusation pursuant to a defendant's plea. However, mere failure to comply with precise ceremonial or verbal formality in arraignment and entry of a plea is not so prejudicial as to require setting aside a defendant's guilty plea which is otherwise entered in accordance with statutory and constitutional requirements. Cf., *State v. Jones*, 218 Neb. 382, 355 N.W.2d 227 (1984) (a defendant's failure to specifically state "I plead guilty" does not vitiate a proper entry of plea to the charge); *Mayes v. United States*, 177 F.2d 505 (8th Cir. 1949).

Upon a review of the entire record of the proceedings against Jost, we find that no substantial miscarriage of justice has occurred regarding the proceedings and judgment resulting in Jost's conviction in the county court. Cf. *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967) ("harmless beyond a reasonable doubt").

The judgment of the district court is affirmed.

AFFIRMED.