**In re The PEOPLE of the State of Colorado, Petitioner–Plaintiff,**

**v.**

**Erik R. ELLISON and Daniel Bartholomew, Respondents– Defendants.**

**No. 99SA117.**

Supreme Court of Colorado, En Banc.

Dec. 4, 2000.

Gustave F. Sandstrom, Jr., District Attorney, Tenth Judicial District, James S. Whitmire, Assistant District Attorney, M. Katherine Howard, Deputy District Attorney, Pueblo, CO, Attorneys for Petitioner.

Matthew Martin, Pueblo, CO, Attorney for Respondents.

Justice BENDER delivered the Opinion of the Court.

In this original proceeding we hold that the definition of knowledge in Colorado's driving under restraint statute does not violate the guarantees of due process of law. The statute provides that if a person drives with "knowledge of circumstances sufficient to cause a reasonable person to be aware that such person's license or privilege to drive was under restraint," he commits a misdemeanor. The Pueblo county court ruled that this language offends due process of law guarantees because it permits a conviction when the defendant was not aware of the restraint on his license or privilege to

drive. On appeal, the Pueblo district court affirmed the county court. We hold that this language does not violate constitutional standards of due process. Hence, we make our rule absolute and order the district court to vacate its order affirming the trial court, to enter an order reversing the trial court's order, and to remand this case to the trial court for further proceedings consistent with this opinion.

## I. FACTS AND PROCEEDINGS BELOW

This case arises out of the consolidated appeal of separate cases brought in Pueblo county court. The district attorney charged Respondent Erik Ellison with driving under restraint. In an unrelated case, the district attorney also charged Respondent Daniel Bartholomew with driving under restraint. The driving under restraint statute makes it a misdemeanor for a person to drive "with knowledge" that such person's license is restrained.[1] Knowledge is defined under the statute as "actual knowledge of any restraint from whatever source *or knowledge of circumstances sufficient to cause a reasonable person to be aware that such person's license or privilege to drive was under restraint.*" § 42–2–138(4)(a) (emphasis added).

Each defendant filed a motion to strike the emphasized language from the statute on the grounds that it would allow a jury to convict based on the knowledge of a hypothetical reasonable person, rather than on what the defendant actually knew. Concluding that the challenged language violated due process of law, the county court granted these motions and required the prosecution to prove that each defendant had actual knowledge of the restraint.

In reaching this conclusion the trial court relied on *People v. Johnson,* 193 Colo. 199, 564 P.2d 116 (1977), where we held unconstitutional the knowledge requirement of the theft by receiving statute then in effect.

---

1. The statute states, in pertinent part: "Any person who drives a motor vehicle or off-highway vehicle upon any highway of this state *with knowledge* that such person's license or privilege to drive ... is under restraint ... is guilty of a misdemeanor." § 42–2–138(1)(a), 11 C.R.S.

(2000) (emphasis added). "Restraint" under the statute means "any denial, revocation, or suspension of a person's license or privilege to drive a motor vehicle in this state, or any combination of denials, revocations, or suspensions." § 42–2–138(4)(b).

That knowledge requirement unconstitutionally permitted a conviction in situations where the defendant was unaware that the property he received was stolen, if a reasonable person would have known that such property was stolen.[2] 193 Colo. at 200, 564 P.2d at 118. We noted in *Johnson* that felony theft may not be based on a defendant's negligence or failure to act reasonably, but rather due process requires that the state of mind for felony theft be that of the actual defendant.

> There is a constitutional proscription against conviction of a defendant charged with felony by theft if it is predicated upon his negligence or his failure to exercise the intelligence of an ordinary prudent man. The standard of culpability, in order to be constitutional, must be what the state of mind of the particular defendant was, not what a jury concludes might be that of a fictional reasonably prudent man.

*Id.*

Consolidating the two defendants' appeals, the district court affirmed the rulings of the county court, holding that both cases were "governed by the principles pronounced by the Colorado Supreme Court in *People v. Johnson.*"

■■■ The district attorney then filed a Petition for a Rule to Show Cause with this court pursuant to C.A.R. 21. We entered an order construing the district attorney's appeal as a Petition for a Writ of Certiorari, which we granted. However, because there is no final judgment in this case, we treat this appeal as one under C.A.R. 21 and review the lower court's rulings on that basis.[3]

## II.  ANALYSIS

■■■ The driving under restraint statute defines "knowledge" as "actual knowledge of any restraint from whatever source or knowledge of circumstances sufficient to cause a reasonable person to be aware that such person's license or privilege to drive was under restraint." § 42–2–138(4)(a). The first part of this definition requires actual knowledge of the restraint. The second part requires actual knowledge of circumstances, with those circumstances defined as those that would cause a reasonable person to be aware of a restraint. The issue presented is whether the second part of the definition of "knowledge" violates the guarantees of due process of law under the federal and Colorado Constitutions.[4] *See* U.S. Const. amend. XIV; Colo. Const. art. II, § 25. A combination of factors convinces us that this definition passes constitutional muster.

### A.

We begin our analysis by turning to the definition of knowledge contained in the driving under restraint statute. This definition contains two independent sections: (1) actual knowledge from any source and (2) knowledge of circumstances that would cause a reasonable person to be aware that his license was under restraint:

> "Knowledge" means actual knowledge of any restraint from whatever source or knowledge of circumstances sufficient to cause a reasonable person to be aware that such person's license or privilege to drive was under restraint.

§ 42–2–138(4)(a).

The second part of this definition involves in part the use of an objective reasonable

---

**2.** The language challenged in *Johnson* read: "A person commits theft by receiving when he receives, retains, loans money by pawn or pledge on, or disposes of anything of value of another ... *having reasonable cause to believe* that said thing of value has been stolen." § 18–4–410(1), 8 C.R.S. (1973 & Supp.1976) (emphasis added).

**3.** An original proceeding examines a lower court's order only when the lower court is ruling without jurisdiction or when it has abused its discretion and there is no adequate appellate remedy. *People v. Dist. Court*, 868 P.2d 400, 403 (Colo.1994). C.A.R. 21 is appropriate when a court strikes a part of a criminal statute as un-

constitutional and the prosecution has no other adequate appellate remedy because of double jeopardy principles. *See People v. Young*, 814 P.2d 834 (Colo.1991).

**4.** The precise issue on which we granted review is: Whether the language of 42–2–138(4)(a), 11 C.R.S. (1999), which allows a defendant to be convicted of driving under restraint if it is proven that the defendant had "knowledge of circumstances sufficient to cause a reasonable person to be aware that such person's license or privilege to drive was under restraint," is unconstitutional.

person standard. However, this definition requires that the particular defendant possess knowledge of those circumstances that would trigger a reasonable person to believe his license was under restraint. Under this definition, a defendant could not be punished for acting without actual subjective knowledge of these circumstances. Thus, knowledge, as defined, combines both a subjective and an objective component. It requires the defendant to be actually aware of specific circumstances. These specific circumstances are defined by using an objective reasonable person standard. For example, if, after being convicted of numerous traffic offenses, a defendant sees mail from the Division of Motor Vehicles (DMV) and then refuses to open the letter, he might be found to have been aware of circumstances that would lead a reasonable person to believe his license to drive was under restraint and his claim that he drove without knowledge of the restraint might fail. In contrast, if we were to accept as true that a defendant unwittingly threw out the DMV letter with his junk mail and that he never saw the DMV letter addressed to him, then he might be found not to have possessed the subjective knowledge of the circumstances that would lead a reasonable person to believe his license was under restraint.[5] This defendant, although perhaps negligent in sorting his mail, might not have driven with the required "knowledge" of the restraint.

The knowledge required by this statute differs from the knowledge required by the former theft by receiving statute held unconstitutional in *Johnson*. The theft statute provided that one who received a thing of value "knowing or believing or having a reasonable cause to believe" that the article had been stolen, was guilty of theft by receiving, provided that he had the intent to keep the property permanently. § 18–4–410(1), 8 C.R.S. (1973 & Supp.1976). In contrast, the driving under restraint statute requires "knowledge of circumstances sufficient to cause a reasonable person to be aware that such person's license or privilege to drive was under restraint." § 42–2–138(4)(a).

There exists a subtle yet significant difference between these two definitions of knowledge: under the definition in *Johnson*, a defendant could be convicted solely on the basis of actions that violate the objective reasonable person standard—he need not be aware of the specific facts that would lead a reasonable person to believe that the property was stolen. In other words, under that statute a defendant might have been convicted for buying property priced so low that a reasonable person would have known the property was stolen even though this particular defendant lacked knowledge of the specific facts—the high retail price of the property—that would lead a reasonable person to believe that the property was stolen. On the other hand, to be convicted of driving under restraint, one must be aware of specific facts that would cause a reasonable person to believe that his license was under restraint.

### B.

■ Equally important as this statute's incorporation of subjective and objective parts in its knowledge definition is the fact that driving under restraint is a public welfare offense. Unlike traditional common-law crimes that serve to punish individuals for morally blameworthy behavior, public welfare offenses seek to promote the public welfare by enforcing compliance with regulatory schemes. *See State v. Collova*, 79 Wis.2d 473, 255 N.W.2d 581, 585 (1977).

■ The Supreme Court has articulated the characteristics that differentiate public welfare offenses from traditional crimes. *See Morissette v. United States*, 342 U.S. 246, 255–56, 72 S.Ct. 240, 96 L.Ed. 288 (1952). The first distinguishing characteristic is the type of act the crime proscribes. Traditional common-law crimes typically prohibit aggressions such as battery or invasions such as burglary. *See id.* at 255, 72 S.Ct. 240. In contrast, public welfare offenses usually proscribe acts of "neglect where the law requires care, or inaction where it imposes a duty." *Id.* The second distinguishing

---

5. This example assumes that the hypothetical defendant did not act deliberately to disregard the DMV letter and, further, that awareness of having been convicted of numerous traffic offenses would not alone lead a reasonable person to believe his license was under restraint.

characteristic involves the type of injury caused by the defendant's conduct. Commission of a public welfare offense does not necessarily result in direct injury to a specific victim but rather creates the probability of injury. *Id.* at 256, 72 S.Ct. 240. Third, the rationale for public welfare offenses differs from that of traditional common-law crimes. *Id.* Rather than directly threatening the security of the state, as, for instance, the crime of burglary does, the commission of public welfare offenses impairs the operation of regulatory schemes that are essential to public order. *See id.* Fourth, unlike common-law crimes, intent is not a necessary element for a public welfare offense because "[t]he accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities." *Id.* Fifth, the nature of and penalty for public welfare offenses involve much less severe punishment than does conviction for common-law felonies. *Id.*

Driving under restraint fits each of the *Morissette* criteria.[6] Driving under restraint under the statute is more an act of neglect than an affirmative aggression or a direct invasion of another's protected interest. Driving under restraint does not result in immediate injury but instead creates the probability of future harm. Because regulations governing the licensing of drivers, including regulations for restraining a driver's license, are essential to public safety, driving under restraint impairs the effectiveness and legitimacy of the driving regulation scheme. A licensed driver is in a position to refrain from driving when his license is restrained and it is reasonable for the state to require him to do so. The misdemeanor penalties for driving under restraint are significantly less severe than those imposed for a felony conviction.

Although Colorado's driving under restraint statute is a public welfare offense, it does not share a common characteristic of many other public welfare offenses because it requires a mental state while most of these offenses do not. Offenses that contain no culpable mental state requirement are termed strict liability crimes. Examples of strict liability public welfare offenses are speeding and driving under the influence. *People v. Caddy,* 189 Colo. 353, 354–55, 540 P.2d 1089, 1091 (1975) (speeding); *People v. Senn,* 824 P.2d 822, 824 n. 3 (Colo.1992) (driving under the influence). Several other states have held driving under restraint to be a constitutionally permissible strict liability crime.[7] However, our legislature has set forth a specific knowledge requirement for this offense and we therefore express no opinion as to whether the elimination of this element is constitutional.

---

**6.** Violations of motor-vehicle laws and of traffic regulations are two of the classic types of public welfare offenses. *See, e.g.,* Francis Bowes Sayre, *Public Welfare Offenses,* 33 Colum.L.Rev. 55, 73 (1933).

**7.** *See, e.g., People v. Turner,* 64 Ill.2d 183, 354 N.E.2d 897, 898 (1976) (determining that the offense of driving while license revoked consists of only two elements: driving and the fact of revocation); *State v. Jones,* 231 Kan. 366, 644 P.2d 464, 466 (1982) (holding that under driving while license suspended statute, once the State has complied with mandatory notice requirements by mailing, an irrebuttable presumption of receipt arises and thus the state does not need to prove that the defendant had actual receipt of notice, actual knowledge of revocation, or specific intent to violate the statute); *State v. Antonsen,* 525 A.2d 1048, 1048 (Me.1987) (holding that no culpable mental state is required for driving after suspension); *State v. Coady,* 412 N.W.2d 39, 41 (Minn.Ct.App.1987) (holding that the offense of driving after revocation requires only that the defendant be shown to have driven an automobile, on a public highway, while his license was under revocation); *State v. Jost,* 219 Neb. 162, 361 N.W.2d 526, 530 (1985) (determining that in driving under suspension case, state needs only prove that defendant operated a motor vehicle on a public highway when his driver's license or operator's privileges had been taken way by some lawful authority); *State v. Morrison,* 2 Ohio App.3d 364, 442 N.E.2d 114, 119 (1982) (holding that establishment of a prima facie case of driving under suspension requires only that the person drive an automobile on a public highway while his license is suspended and that notice was mailed to the last known address of the defendant and therefore the statute is akin to a strict liability statute and requires no culpable mental state); *State v. Buttrey,* 293 Or. 575, 651 P.2d 1075, 1078 (1982) (concluding that the language of the driving while suspended statute clearly indicates a legislative intent to dispense with a culpable mental state requirement).

The Motor Vehicle Code, sections 42–1–101 to 20–511, which includes the driving under restraint statute, contains numerous notice provisions designed to inform drivers of changes in the status of their driving privilege.[8] The driving under restraint statute itself contains a notice provision that encourages the Division of Motor Vehicles to use reliable methods, such as first-class mail or personal delivery or service, when informing drivers of restraints on their licenses.[9] These provisions give substance to the term "circumstances" in the statute by offering examples of circumstances that would cause a reasonable person to be aware that his license was under restraint. For example, a person who has a restraint placed on his license should receive a notice of the restraint from the DMV. A reasonable person would read this notice. Assuming that a person who received the notice possessed no knowledge of the restraint from other sources, if that person chose not to open the notice and read it, then he would not have actual knowledge of the restraint. He would, however, have actual knowledge of circumstances that would cause a reasonable person to become aware that his license was under restraint.

We have held that a driver is responsible "for knowing the traffic laws of the state, including the sanctions applicable to a violation of or refusal to comply with those laws, and is also responsible for monitoring the effects of his own infractions on his driving privilege." *Jolly v. People,* 742 P.2d 891, 897–98 (Colo.1987). States that make driving under restraint a strict liability crime make adherence to these responsibilities absolute. Requiring "knowledge," as our code does, limits punishment to those who are subjectively aware of circumstances that would lead a responsible driver to realize his license was under restraint and thus not continue to drive. Hence, the knowledge requirement encourages a driver to "monitor[ ] the effects of his own infractions on his driving privilege" and thereby advances the state interest in promoting driver responsibility. *Id.*

In addition, driving is a dangerous activity. The public safety interest in regulating driving is self-evident. Effective regulation of driving depends on the state's ability to enforce its decisions to restrain drivers' licenses. If drivers could avoid driving under restraint sanctions by, for instance, disregarding mail from the division, then the state's ability to enforce driver responsibilities would be thwarted. To ensure compliance with license restraint decisions, the legislature has determined that those who violate the driving under restraint law

8. *See* § 42–1–119(2), 11 C.R.S. (2000) (mandating that required notices and orders must be in writing and if mailed postpaid by first-class mail); § 42–1–218, 11 C.R.S. (2000) (requiring DMV to publish or post, at least once a month, a record of driver's license revocations and suspensions); § 42–2–125(3), 11 C.R.S. (2000) (requiring immediate notification per section 42–2–119(2) in cases of mandatory revocation of license); 42–2–126, 11 C.R.S. (2000) (requiring same in cases of revocation based on administrative determination); 42–2–127(8)(a), 11 C.R.S. (2000) (requiring written notice of a suspension hearing whenever the division's records show that a licensee has accumulated a sufficient number of points to be subject to license suspension); 42–2–127.5(2), 11 C.R.S. (2000) (requiring written notice when license suspended because of violation of a child support order); 42–2–127.7(4), 11 C.R.S. (2000) (requiring notice of suspension when license suspended because motorist uninsured); 42–2–111, 11 C.R.S. (2000) (requiring motor vehicle division, when it determines that a driver is incompetent or otherwise not qualified to be licensed, to submit such person to an examination of his eyesight, ability to

read and understand highway signs, knowledge of the traffic laws, ability to exercise ordinary and reasonable care and control in the operation of a motor vehicle, and other physical and mental examination, but only after the division first provides written notice to such person); § 42–2–120(5), 11 C.R.S. (2000) (requiring peace officers and employees of the division to serve a person who has a notice or order relating to driving restraints against him such notice or order any time the officer or employee comes into contact with such person, if the officer or employee believes the person may not have been previously served with the notice or order).

9. This provision reads:

In any prosecution for a violation of this section, the fact of the restraint may be established by certification that a notice was mailed by first-class mail ... to the last-known address of the defendant, or by the delivery of such notice to the last known address of the defendant, or by personal service of such notice upon the defendant.

§ 42–2–138(2).

should be subject to a misdemeanor penalty.[10]

## C.

Applying these principles, we find the *Johnson* rationale distinguishable and inapplicable to the definition of knowledge under this statute. As opposed to the unconstitutional felony theft by receiving statute, this statute requires both a subjective and objective component of knowledge: a subjective awareness of specific facts or circumstances, that in turn are defined by the hypothetical reasonable person standard. Hence, a driver may not be punished without proof of actual knowledge of facts that show that a reasonable person would believe his license to drive was under restraint. This statute does not punish those who act merely in violation of a reasonable person standard, as did the unconstitutional felony theft statute. Rather, it punishes those who have actual knowledge of facts that would lead a reasonable person to believe that his license was under restraint.

In addition to these definitional differences, the *Johnson* rationale does not apply to the driving under restraint statute because, unlike felony theft by receiving, driving under restraint is a public welfare offense. Its special definition of knowledge deters irresponsible drivers and punishes culpable drivers who had actual knowledge of facts that should have led them to conclude that their licenses were under restraint. The Motor Vehicle Code contains additional notice safeguards to provide the driver with actual notice. Moreover, there exists a strong public safety interest in regulating drivers and driving and the penalties for this offense are misdemeanors.

Hence, for all these reasons, we hold that the definition of knowledge in the driving under restraint statute does not offend guarantees of due process of law and passes constitutional muster.

## III. CONCLUSION

For the reasons stated, we make our rule absolute and order the district court to vacate its order affirming the trial court, to enter an order reversing the trial court's order, and to remand this case to the trial court for further proceedings consistent with this opinion.

Justice COATS, concurring in the judgment only:

I concur in the judgment of the court but write separately to explain my reasons for not joining its opinion. In my view the court's attempt to distinguish "knowledge" as defined at section 42–2–138(4)(a), 11 C.R.S. (2000), from an objective, "reasonable man" standard is neither persuasive nor necessary. Because I consider it well settled that the legislature is not constitutionally precluded from punishing a regulatory offense like "Driving under restraint" as a strict liability offense, much less as an offense based on the awareness of a reasonable person, I am reluctant to join an opinion that I believe permits a contrary inference.

Although "Driving under restraint" ostensibly requires the defendant's "knowledge" that his privilege to drive is under restraint, in this context the General Assembly has expressly defined "knowledge" in terms more like those typically used to describe negligence. Rather than knowledge of the restraint itself, knowledge of circumstances from which a reasonable person would be aware of the restraint is enough. Unlike subjective culpable mental states requiring a conscious awareness by the defendant, an objective standard is characterized by his failure to be aware of something that an ordinary, reasonable person would be aware of under the same circumstances. While the court's characterization of the statutory lan-

---

**10.** The penalty for driving under restraint, first offense, when the restraint was not imposed pursuant to an alcohol- or drug-related driving conviction, is not less than five days nor more than six months in the county jail, plus a discretionary fine of not less than fifty nor more than five hundred dollars. § 42–2–138(1)(a). The maximum penalty possible under the statute is that imposed for a subsequent conviction where the underlying restraint is for an alcohol- or drug-related conviction. The penalty for that offense is not less than ninety days nor more than two years in the county jail and, in the discretion of the court, a fine of not less than five hundred dollars nor more than three thousand dollars. § 42–2–138(1)(d)(I).

guage as combining both subjective and objective components is undoubtedly accurate, I find it to be constitutionally insignificant. Requiring knowledge of surrounding circumstances from which a reasonable person would draw a particular inference or be aware of a consequential fact does not make the standard any less objective; whether express or implied, it is essential to the description of an objective standard. Ultimately, guilt is predicated on the fact that a reasonable person would be aware of a restraint on the defendant's driving privilege, whether the defendant is aware of it or not.

In my view, however, it is also wholly unnecessary to distinguish this requirement from an objective standard because well-established principles of due process require no more. Violations of the highly regulated privilege to drive are quintessential public safety offenses rather than legislative codifications of common-law crimes. As long as they include a voluntary act, offenses may be created by the General Assembly requiring no "culpable mental state" at all. *People v. Wilhelm*, 676 P.2d 702, 706 (Colo.1984); *People v. Rostad*, 669 P.2d 126, 129 (Colo.1983). Only with regard to so-called common-law crimes has this proposition been limited. *See Bollier v. People*, 635 P.2d 543, 546 (Colo. 1981) (requiring a mental state where the proscribed conduct had its origins in common law and the statute was not enacted pursuant to the state's regulatory powers); *see also City of Englewood v. Hammes*, 671 P.2d 947, 953 (Colo.1983) ("obstructing a police officer" merely codified the common-law crime and as such required a mens rea). Although a constitutional basis for limiting legislative prerogatives in this way is far from clear, the question whether these holdings confound a principle of statutory construction, *see Morissette v. United States*, 342 U.S. 246, 249, 72 S.Ct. 240, 96 L.Ed. 288 (1952); *see also People v. Bridges*, 620 P.2d 1, 3 (Colo.1980)(holding that where a statute is silent as to mens rea but codifies a common-law crime that had a specific mens rea, the courts will impute the necessary culpability requirement), with some notion of substantive due process, long abandoned as unduly infringing on the exercise of police powers, can wait for another day. In "Driving under restraint," the General Assembly has neither modified a common-law crime nor simply omitted a culpable mental state. It has plainly and expressly created a regulatory offense based on the combination of a voluntary act and deviation from an objective standard of care.

For the same reasons, *People v. Johnson*, 193 Colo. 199, 564 P.2d 116 (1977), imposes no limitations on the regulatory offense of "Driving under restraint." Because the authorities relied upon in *Johnson* merely construed statutes in their respective jurisdictions, *see Von Sprecken v. State*, 70 Ga.App. 222, 28 S.E.2d 341, 342–43 (1943) (interpreting the term "knowing" in Georgia's theft by receiving statute); *Commonwealth v. Boris*, 317 Mass. 309, 58 N.E.2d 8, 12–13 (1944) (interpreting the statutory phrase "knowing it to have been stolen or embezzled"), and *Johnson's* overbreadth holding failed to suggest infringement on any constitutionally protected conduct, *see Hoffman Estates v. Flipside*, 455 U.S. 489, 494–95, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) (stating that a facial overbreadth challenge must fail unless the enactment reaches a substantial amount of constitutionally protected conduct); *see also People v. Shepard*, 983 P.2d 1, 3 (Colo. 1999), the actual basis for its holding is less than clear. Nevertheless, it clearly applied to the codification of a common-law crime.

The special concurrence in *Johnson*, however, does identify a potential due process concern with crimes containing no culpable mental state. *See Johnson*, 193 Colo. at 201–02, 564 P.2d at 118–19 (Erickson, J., specially concurring). A legislative proscription may be void for vagueness if it is too indefinite to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited or if it fails to provide sufficiently explicit standards to avoid arbitrary and discriminatory enforcement. *Flipside*, 455 U.S. at 498, 102 S.Ct. 1186; *see also People v. West* 724 P.2d 623, 626 (Colo.1986); *City of Englewood*, 671 P.2d at 951. In such a case, a scienter requirement may mitigate a law's vagueness. *Flipside*, 455 U.S. at 499, 102 S.Ct. 1186. Where, however, the proscription at issue is merely to refrain from engaging in a highly regulated and dangerous activity without taking reasonable care to insure that one's privilege to do so has not

been denied or revoked as the result of prior violations, there can be no serious question about an ordinary person's ability to know the prohibited conduct. Furthermore, when a legislative proscription does not threaten to be overbroad by infringing on First Amendment conduct, vagueness challenges are limited to consideration of the facts of the case at hand. *Flipside,* 455 U.S. at 495 n. 7, 102 S.Ct. 1186. The district court's order declaring a portion of the statute facially unconstitutional therefore could be justified on vagueness grounds only if there could be no application in which it would not be unconstitutionally vague. *Id.* at 495, 102 S.Ct. 1186.

I would make the rule absolute simply because "Driving under restraint" is manifestly not a common-law crime and because the statute describes at least some circumstances in which persons of ordinary intelligence are adequately put on notice that they are prohibited from driving.