**Petitioner/Cross–Respondent: The PEOPLE of the State of Colorado,**

v.

**Respondent/Cross–Petitioner: Patrick Allen MANZO.**

**No. 05SC203.**

Supreme Court of Colorado, En Banc.

Oct. 2, 2006.

John W. Suthers, Attorney General, Paul Koehler, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, for Petitioner/Cross–Respondent.

Maguire & Rabun, LLC, Bruce H. Rabun, Greenwood Village, for Respondent/Cross–Petitioner.

Justice EID does not participate.

RICE, Justice.

We granted certiorari to review the court of appeals' decision construing the offense of Leaving the Scene of an Accident with Serious Injury, section 42–4–1601, C.R.S. (2006), in *People v. Manzo*, 114 P.3d 78 (Colo.App. 2005).[1] The court of appeals first held that to be found guilty of Leaving the Scene of an Accident with Serious Injury a defendant must have known that he or she was involved in an accident. Second, the court of appeals held that section 42–4–1601 does not require the defendant to act with knowledge that serious injuries resulted from the accident. Upon review, we hold that Leaving the Scene of an Accident with Serious Injury constitutes a strict liability offense because the plain language of the statute does not require or imply a culpable mental state. Accordingly, we reverse in part and affirm in part the judgment of the court of appeals.

## I. Factual and Procedural History

This case stems from a car accident that occurred while Respondent Patrick Allen Manzo was driving his truck. As Manzo pulled out of a parking lot, his truck sideswiped a southbound vehicle. The collision caused the southbound vehicle to travel off the roadway and into a field. Manzo did not stop or remain at the scene of the accident. As a result of the accident, three of the four

---

1. We granted certiorari on the following issues:
   1. Whether the traffic code offense of leaving the scene of an accident causing serious bodily injury— § 42–4–1601, C.R.S. (2004)—is a public welfare strict liability offense for which there is no mental state requirement.

2. Whether the felony offense of leaving the scene of an accident involving serious bodily injury—Colo. Rev. Stat. § 42–4–1601(1), (2)(b)—requires knowing both involvement in an accident and that serious bodily injury has occurred.

occupants of the sideswiped vehicle sustained serious injuries.

At the scene of the accident, the police discovered a license plate and a large metal guard which had fallen from the front of Manzo's truck. The police identified Manzo through the license plate. Manzo was charged with one count of Leaving the Scene of an Accident with Serious Injury, section 42–4–1601(1), (2)(b), C.R.S. (2006),[2] one count of Failure to Report an Accident, section 42–4–1606(1), C.R.S. (2006), and three counts of Careless Driving, section 42–4–1402, C.R.S. (2006).

Pursuant to a plea agreement, Manzo pleaded guilty to one count of Leaving the Scene of an Accident with Serious Injury and the other counts were dismissed. The "Petition to Enter Plea of Guilty" instructed Manzo of the elements of Leaving the Scene as follows:

1. That the defendant,
2. in the State of Colorado, at or about the date and place charged,
3. being the driver or operator of a vehicle,
4. directly involved in an accident which resulted in serious bodily injury to another person,
5. did unlawfully fail to immediately stop his vehicle at the scene or as close thereto as possible or forthwith return to or in every event,
6. remain at the scene until he had fulfilled the requirements of Section 42–4–1603, C.R.S.

Several paragraphs of explanations and definitions followed the enumerated elements. The first paragraph stated:

A person acts "knowingly" with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists. A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is practically certain to cause the result.

The "Petition to Enter Plea of Guilty" did not relate the definition of knowingly to the enumerated elements.

The trial court entered a judgment of conviction and sentenced Manzo to two years and ten months in the Department of Corrections. Subsequently, Manzo filed a motion for postconviction relief pursuant to Colorado Rule of Criminal Procedure 35(c). Manzo sought to withdraw his guilty plea and vacate the judgment of conviction and sentence, arguing that he did not enter his guilty plea voluntarily and knowingly. Specifically, Manzo argued that the trial court violated Criminal Rule of Procedure 11 because the trial court failed to advise him regarding the culpable mental state required for Leaving the Scene of an Accident with Serious Injury. The trial court denied the 35(c) motion, and Manzo filed an appeal.

In *People v. Manzo*, 114 P.3d 78 (Colo. App.2005), a two judge majority of the court of appeals held that the trial court failed to provide an adequate advisement. The majority concluded that section 42–4–1601 requires that a defendant must have known that he or she was involved in an accident. *Manzo*, 114 P.3d at 82. In so holding, the court relied on section 18–1–503(2), C.R.S. (2006), and reasoned that because Leaving the Scene of an Accident with Serious Injury is a class 5 felony, the General Assembly must have intended a culpable mental state. *Id.* at 81. The court also emphasized that "most courts in other jurisdictions have construed hit-and-run statutes to require knowledge of the occurrence of the collision, injury, or damage...." *Id.* (citation omitted). The court rejected Manzo's argument that the offense of Leaving the Scene of an Accident with Serious Injury requires that the defendant "must also have acted with knowledge that serious injuries were incurred in the accident" and concluded that such a requirement could defeat the public interest served by requiring drivers to stop and determine whether other people need assistance. *Id.* at 82. The court reversed the trial court's or-

---

**2.** The statutory provisions cited in this opinion have not changed in any way relevant to our analysis from the date of the offense to the time of this writing. Therefore, for ease of reference, we cite to the 2006 edition of the code.

der denying postconviction relief, vacated the judgment of conviction and sentence, and remanded the case. *Id.*

Judge Russel dissented, reasoning that the plain language of the statute controlled and concluding that section 42–4–1601 creates a strict liability offense. *Manzo,* 114 P.3d at 82–84 (Russel, J., dissenting).

The People filed a petition for writ of certiorari, and Manzo filed a cross-petition. We granted certiorari review to determine whether Leaving the Scene of an Accident with Serious Injury is a strict liability offense or whether the offense requires knowledge that an accident occurred and knowledge that serious bodily injury resulted.

## II. Analysis

■ The People argue that Leaving the Scene of an Accident with Serious Injury is a strict liability offense and, therefore, the court of appeals erred in vacating the judgment of conviction and sentence. In response, Manzo argues that section 42–4–1601 implies a culpable mental state; to be found guilty a driver must know that an accident occurred and that injuries resulted. We agree with the People.

### A. Statutory Construction

■ We must interpret section 42–4–1601 to determine whether the court of appeals erred in holding that the statute requires a culpable mental state of "knowingly." The proper construction of a statute is a question of law that we review de novo. *Alvarado v. People,* 132 P.3d 1205, 1207 (Colo.2006). "The power to define criminal conduct and to establish the legal components of criminal liability is vested in the General Assembly." *Gorman v. People,* 19 P.3d 662, 665 (Colo.2000). Thus, in construing the meaning of a statute, we must determine and give effect to the legislature's intent. *People v. Madden,* 111 P.3d 452, 457 (Colo.2005). In so doing, we look to the plain and ordinary meaning of the statutory language, and we construe the statute to further the legislative intent represented by the statutory scheme. *Id.*

### 1. The Plain Language of Section 42–4–1601 Does Not Require a Culpable Mental State.

The Leaving the Scene of an Accident with Serious Injury statute, section 42–4–1601, C.R.S. (2006), provides:

(1) The driver of any vehicle directly involved in an accident resulting in injury to, serious bodily injury to, or death of any person shall immediately stop such vehicle at the scene of such accident or as close to the scene as possible but shall immediately return to and in every event shall remain at the scene of the accident until the driver has fulfilled the requirements of section 42–4–1603(1).[3]

The statute's penalty provision follows, and the penalties vary based on the type of harm that results from the accident. A driver commits a class 1 misdemeanor traffic offense if the accident resulted in injury to any person, a class 5 felony if the accident resulted in serious bodily injury to any person, and a class 4 felony if the accident resulted in the death of any person. § 42–4–1601(2).

Section 42–4–1601 does not specify a culpable mental state. Although legislative silence regarding mental state is not conclusive, "it is well settled that the legislature may make a prohibited act a crime, irrespective of the elements of intent or scienter, when public policy so requires." *People v. Caddy,* 189 Colo. 353, 354–55, 540 P.2d 1089, 1090 (1975).

---

**3.** Section 42–4–1603(1) provides:

The driver of any vehicle involved in an accident resulting in injury to, serious bodily injury to, or death of any person or damage to any vehicle which is driven or attended by any person shall give the driver's name, the driver's address, and the registration number of the vehicle he or she is driving and shall upon request exhibit his or her driver's license to the person struck or the driver or occupant of or

person attending any vehicle collided with and where practical shall render to any person injured in such accident reasonable assistance, including the carrying, or the making of arrangements for the carrying, of such person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or if the carrying is requested by the injured person.

Section 18–1–502, C.R.S. (2006),[4] sets forth the general requirements for criminal liability:

> The minimum requirement for criminal liability is the performance by a person of conduct which *includes a voluntary act or the omission to perform an act which he is physically capable of performing.* If that conduct is all that is required for commission of a particular offense, or if an offense or some material element thereof does not require a culpable mental state on the part of the actor, the offense is one of "strict liability". If a culpable mental state on the part of the actor is required with respect to any material element of an offense, the offense is one of "mental culpability". (emphasis added)

Section 42–4–1601 creates a duty for a driver involved in an accident to stop at the scene, render aid, and fulfill statutory reporting requirements. The failure to fulfill this duty constitutes an omission to perform an act that a driver is physically capable of performing. Thus, the plain and ordinary meaning of the statutory language meets the minimum requirement for criminal liability, and section 42–4–1601 qualifies as a strict liability offense. Accordingly, we conclude that section 42–4–1601 does not require a culpable mental state.

In so concluding, we find *People v. De-Herrera,* 697 P.2d 734, 741 (Colo.1985), particularly instructive. In *DeHerrera,* we held that Leaving the Scene of an Accident Resulting in Damage to Another Vehicle, section 42–4–1602, C.R.S. (2006),[5] is a strict liability offense, and we noted that "no culpable mental state is expressly designated in the statutory offense[ ] of . . . leaving the scene of an accident [resulting in damage to another vehicle]." *Id.*

The court of appeals determined *DeHerrera* was inapplicable because the offense of Leaving the Scene of an Accident Resulting in Damage to Another Vehicle constitutes a class two misdemeanor traffic offense and the offense of Leaving the Scene of an Accident Resulting in Serious Injury may constitute a felony. *Manzo,* 114 P.3d at 82. We find this distinction unconvincing because both statutes use the same language to describe a driver's duty to stop at the scene of an accident and both statutes are silent regarding the offending driver's mental state; only the result of the accident and the penalty provisions differ. *Compare* § 42–4–1601, *and* § 42–4–1602. The two statutes concerning leaving the scene of an accident do not prescribe different penalties for drivers who do not stop because they are not aware of their involvement in an accident and drivers who are aware of their involvement in an accident but choose to continue driving. Rather, the statutes penalize drivers according to the result of the accident. *See Daniels v. People,* 159 Colo. 190, 196, 411 P.2d 316, 318 (1966) (discussing the difference between statutes that are primarily concerned with a behavior in itself and statutes that are concerned with the result which flows from a behavior).

Because both statutes use the same language to describe a driver's duty to stop at the scene of an accident and both statutes are silent regarding an offending driver's mental state, our conclusion in *DeHerrera* that Leaving the Scene of an Accident Resulting in Damage to Another Vehicle is a strict liability crime guides our interpretation here. Thus, construing Leaving the Scene of an Accident with Serious Injury as a strict liability offense comports with this Court's precedent.

---

4. Although the Leaving the Scene statute is part of the traffic code, provisions of the criminal code guide our interpretation because the statute defines a criminal offense. Section 18–1–103, which defines the scope and application of the criminal code, provides that except in certain circumstances inapplicable here, "the provisions of [the criminal] code govern the construction of and punishment for any offense defined in any statute of the state, . . . which is committed on or after July 1, 1972." § 18–1–103(1), C.R.S. (2006).

5. When we announced *DeHerrera,* the offense of Leaving the Scene of an Accident Resulting in Damage to Another Vehicle was codified at section 42–4–1402, 17 C.R.S. (1984). The statute is currently renamed Accident Involving Damage—Duty and is codified at section 42–4–1602, C.R.S. (2006).

## 2. The Leaving the Scene of an Accident with Serious Injury Statute Does Not Imply a Culpable Mental State.

Despite the absence of explicit language in the statute requiring a mental state, the court of appeals determined that the statute implied a culpable mental state. *Manzo,* 114 P.3d at 82. We disagree.

It is true that legislative silence does not always indicate a strict liability offense because the statute may imply a culpable mental state. *Gorman,* 19 P.3d at 665. Thus, to determine whether section 42–4–1601 implies a culpable mental state, we examine the statute in context with other statutory provisions and seek to further the legislative intent represented by the statutory scheme. We turn first to provisions of the criminal code, and second, we examine the legislative intent represented by the traffic code.

The court of appeals relied on section 18–1–503(2), C.R.S. (2006), in concluding that section 42–4–1601 contains an implied mental state. Section 18–1–503(2), entitled Construction of Statutes with Respect to Culpability Requirements, provides:

> Although no culpable mental state is expressly designated in a statute defining an offense, a culpable mental state may nevertheless be required for the commission of that offense, or with respect to some or all of the material elements thereof, if the proscribed conduct necessarily involves such a culpable mental state.

On numerous occasions this Court has applied section 18–1–503(2) to determine whether a statute contains an implied culpable mental state. In interpreting statutes, we have emphasized our role in discerning and effectuating the intent of the General Assembly based on the statutory language and legislative history. *See, e.g., People v. Hickman,* 988 P.2d 628, 644–45 (Colo.1999) (holding that the offense of Retaliation Against a Witness necessarily involves the culpable mental state of "intentional" because the statutory language required that the defendant act with a specifically defined conscious objective); *People v. McNeese,* 892 P.2d 304, 310–13 (Colo.1995) (holding that the mental state knowingly applied to the unlawful entry element of the "make-my-day" stat-

ute where the General Assembly intended the statute to deter criminals from breaking into homes to commit crimes and did not intend the statute to justify use of physical force against persons who enter dwellings in good faith or by accident); *People v. Gross,* 830 P.2d 933, 941 (Colo.1992) (holding that the statute prohibiting possession of weapons requires as an essential element that the defendant intend to use the "other dangerous instrument" as a weapon because the statutory language reflected a legislative intent not to proscribe possession of such instruments when carried for an innocent purpose).

Unlike the statutes in which we have found implied mental states, the language of section 42–4–1601 does not reflect a legislative intent to require a culpable mental state. Section 42–4–1601 provides that a driver involved in an accident "shall immediately stop;" this language creates a mandatory duty. Specifically, the statute requires drivers to stop and render immediate and urgent assistance to injured parties if there is an accident. Thus, under section 18–1–503(2), Leaving the Scene of an Accident with Serious Injury does not involve a culpable mental state. Rather, the inquiry is simply whether or not there has been an accident. If so, the duty to stop and assist arises and the failure to stop and assist results in criminal liability. Accordingly, implying a culpable mental state is not necessary to further the legislative intent represented by the criminal code.

Moreover, implying a culpable mental state is not necessary to further the legislative intent behind the traffic code. The provisions of the traffic code advance the state's interest in promoting driver responsibility. "[D]riving is a dangerous activity. The public safety interest in regulating driving is self-evident." *People v. Ellison,* 14 P.3d 1034, 1039 (Colo.2000). If a driver could avoid punishment for Leaving the Scene of an Accident with Serious Injury by failing to have actual knowledge regarding his or her involvement in the accident, then "the state's ability to enforce driver responsibility would be thwarted." *Id.* Furthermore, other traffic offenses do not require a culpable mens rea, suggesting a legislative intent to hold drivers accountable for certain dangerous driving be-

haviors regardless of their mental state. *See People v. Senn,* 824 P.2d 822, 824 n. 3 (Colo. 1992) (noting that driving under the influence is a strict liability offense); *Caddy,* 189 Colo. at 354–55, 540 P.2d at 1091 (holding that speeding is a strict liability offense).

Accordingly, we conclude that the court of appeals erred in holding that section 42–4–1601 contains an implied culpable mental state of knowingly. Neither the plain and ordinary meaning of the statutory language nor the legislative intent represented by the statutory scheme requires a culpable mental state. Therefore, we hold that Leaving the Scene of an Accident with Serious Injury is a strict liability offense.

### 3. The Felony Penalty Provision Does Not Prevent Leaving the Scene of an Accident with Serious Injury from Being a Strict Liability Offense.

In concluding that the legislature did not intend to impose a felony punishment without requiring a culpable mental state, the court of appeals relied on *People v. Ellison,* 14 P.3d 1034, 1038 (Colo.2000); *People v. Sequin,* 199 Colo. 381, 386, 609 P.2d 622, 625–26 (1980); and *People v. Washburn,* 197 Colo. 419, 422, 593 P.2d 962, 964 (1979). These cases, however, do not require such a conclusion.

In *Ellison,* we analyzed the misdemeanor offense of Driving Under Restraint. 14 P.3d at 1038. Because the Driving Under Restraint statute explicitly required a culpable mental state, we declined to consider whether a culpable mental state was necessary. *Id.* Thus, the issue of whether the legislature intended to impose a felony punishment without requiring a culpable mental state was not before the Court.

In *Sequin,* we held that the legislature intended "knowledge of the existence of an altered identification number with respect to an automobile or automobile part" to be an essential element of the crime of Possession of an Automobile or Automobile Part Containing Altered Identification Numbers. 199 Colo. at 386, 609 P.2d at 625–26. The statute in *Sequin* provided that any person who "knowingly possesses an automobile or automobile part containing said removed, changed, altered, or obliterated vehicle identification number..." commits a class 4 felony. *Id.* at 384, 609 P.2d at 623–24. Because the "statute was enacted to curb trafficking in stolen automobiles and stolen automobile parts," *id.* at 385, 609 P.2d at 624, we determined that the statute would not serve its purpose if the culpable mental state of knowingly did not apply to the fact of an altered identification number. *Id.* at 386, 609 P.2d at 626. On the contrary, as discussed above, a culpable mental state is not necessary in order to effectuate the purpose of the Leaving the Scene of an Accident with Serious Injury statute.

In *Washburn,* we briefly discussed strict liability offenses and noted that "theft of rental property, which is punishable by imprisonment in the state penitentiary because it is a felony, is not akin to speeding violations." 197 Colo. at 422, 593 P.2d at 964. We did not distinguish the offenses of theft and speeding primarily based on the fact that one constituted a felony; rather, we distinguished the offenses based on the fact that theft of rental property was a provision concerning theft which derived from the common law and therefore required a culpable mental state. *Id.; see United States v. U.S. Gypsum Co.,* 438 U.S. 422, 437, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978) (stating that an interpretive presumption exists that crimes which originate from the common law require mens rea). Unlike provisions regarding theft, the offense of Leaving the Scene of an Accident with Serious Injury does not derive from the common law.

Additionally, we note that a strict liability offense punishable as a felony does not present an anomaly. The legislature has designated other felony offenses as strict liability crimes. Vehicular Homicide While Driving Under the Influence is a strict liability offense penalized as a class 3 felony. § 18–3–106(1)(b)(I), (c), C.R.S. (2006); *see People v. Garner,* 781 P.2d 87, 89 (Colo.1989). Similarly, Vehicular Assault while Driving Under the Influence is a strict liability offense penalized as class 4 felony. § 18–3–205(1)(b), (c).

## B. Leaving the Scene of an Accident with Serious Injury is a Constitutionally Permissible Strict Liability Offense.

Manzo argues that construing Leaving the Scene of an Accident with Serious Injury as a strict liability offense offends notions of due process. We disagree. Although no general constitutional doctrine of mens rea exists, *Powell v. Texas*, 392 U.S. 514, 535, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968), within certain limitations the states may "create strict criminal liabilities by defining criminal offenses without any element of scienter. . . ." *Smith v. California*, 361 U.S. 147, 150, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959); *see People v. Rostad*, 669 P.2d 126 (Colo.1983). In fact, this Court and the United States Supreme Court have specifically recognized a constitutionally permissible type of strict liability offense, public welfare offenses. *Morissette v. United States*, 342 U.S. 246, 255, 72 S.Ct. 240, 96 L.Ed. 288 (1952); *Ellison*, 14 P.3d at 1037. Public welfare offenses enforce compliance with regulatory schemes and seek to protect public health, safety, and welfare. *See Ellison*, 14 P.3d at 1037–38.

Five characteristics differentiate public welfare offenses from traditional common law crimes. *Morissette*, 342 U.S. at 255–56, 72 S.Ct. 240; *Ellison*, 14 P.3d at 1037–38. First, as opposed to common law crimes that generally prohibit aggressions, public welfare offenses typically proscribe "neglect where the law requires care, or inaction where it imposes a duty." *Morissette*, 342 U.S. at 255, 72 S.Ct. 240; *Ellison*, 14 P.3d at 1037. Second, public welfare offenses create a different type of injury than common law offenses; rather than resulting in direct injury to a specific victim, public welfare offenses create the probability of injury. *Morissette*, 342 U.S. at 255–56, 72 S.Ct. 240; *Ellison*, 14 P.3d at 1038. Third, public welfare offenses seek to further a different goal than most common law offenses. "Rather than directly threatening the security of the state, as for instance, the crime of burglary does, the commission of public welfare offenses impairs the operation of regulatory schemes that are essential to public order." *Ellison*, 14 P.3d at 1038; *see Morissette*, 342 U.S. at 256, 72 S.Ct. 240. Fourth, public welfare offenses do not specify intent as a necessary element because "[t]he accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably exact from one who assumed his responsibilities." *Morissette*, 342 U.S. at 256, 72 S.Ct. 240; *Ellison*, 14 P.3d at 1038. Fifth and finally, penalties for public welfare offenses are typically relatively small in comparison to penalties for common law crimes. *Morissette*, 342 U.S. at 256, 72 S.Ct. 240; *see Ellison*, 14 P.3d at 1038.

After reviewing these five characteristics, we conclude that Leaving the Scene of an Accident with Serious Injury constitutes a public welfare offense. First, the statute proscribes inaction where the law requires performance of a duty because it imposes a duty to stop and punishes a driver's failure to stop.

Second, rather than directly resulting in injury to a specific victim, the offense of Leaving the Scene of an Accident with Serious Injury creates the probability of injury. Section 42–4–1601 purports to minimize the probability of harm that may result from a driver fleeing the scene of an accident. A driver who violates the statute increases the likelihood that another person will suffer more severe injuries because the injured person will not receive the assistance he or she needs.

Third, committing the offense of Leaving the Scene of an Accident with Serious Injury impairs an important regulatory scheme. "[D]riving is a dangerous activity. The public safety interest in regulating driving is self-evident." *Ellison*, 14 P.3d at 1039. Effective regulation of driving depends on the state's ability to penalize drivers who do not stop at accident scenes. By requiring a driver who is involved in an accident to render reasonable assistance and provide information, the prohibition against Leaving the Scene of an Accident with Serious Injury is designed to guard the social order.

Fourth, section 42–4–1601 does not specify intent as a necessary element. Regardless of the mental state of a driver who failed to stop at the scene of an accident, the injury is the same, namely, that the injured person is

deprived of the assistance and information from the driver who failed to stop.

Fifth, the penalties for Leaving the Scene of an Accident with Serious Injury are small in comparison to many common law crimes. In *Ellison,* we noted the offenses of battery and burglary as examples of typical common law crimes. 14 P.3d at 1037. First degree assault and first degree burglary are class 3 felonies. §§ 18–3–202(2)(b), 18–4–202(2), C.R.S. (2006). Thus, Leaving the Scene is penalized less severely than several typical common law crimes.

Because Leaving the Scene qualifies as a public welfare offense, Manzo's constitutional argument fails.

### III.   Conclusion

We hold that Leaving the Scene of an Accident with Serious Injury is a strict liability offense because the plain language of the statute does not require or imply a culpable mental state. Accordingly, we reverse the decision of the court of appeals that, to be guilty of Leaving the Scene of an Accident with Serious Injury, a driver must know he or she was involved in an accident, and we affirm the decision of the court of appeals that, to be guilty of Leaving the Scene of an Accident with Serious Injury, a driver does not need to know that injuries resulted.

Accordingly, because the trial court properly advised Manzo regarding the elements of Leaving the Scene of an Accident with Serious Injury, we reinstate the judgment of conviction and sentence.